EVANS PRODUCTS CO. *v.* STATE BOARD OF ESCHEATS.

1. STATUTES—CONSTITUTIONAL LAW—SUBJECT MATTER.

   The matter of first importance in the determination of the constitutionality of a statute is the subject matter to which the statute pertains or is applicable.

2. ESCHEATS—INTESTACY—HEIRS—KINDRED.

   If one dies intestate without heirs or kindred, his estate escheats to the people of the State (Act No. 288, chap. 2, §§ 80, 93, Pub. Acts 1939).

3. SAME—UNCLAIMED PROPERTY—CONSIGNMENTS—BAILMENTS.

   The proceeds from the sale of certain unclaimed personal property in the hands of certain consignees or bailees escheats to the State (2 Comp. Laws 1929, §§ 9014–9025).

4. SAME—PROPERTY OF UNKNOWN DECEASED PERSONS.

   Money or property found on the body of an unknown deceased person may ultimately pass into the State treasury (3 Comp. Laws 1929, §§ 17419, 17420).

5. SAME—UNCLAIMED PROPERTY OF DECEASED CONVICTS.

   In the absence of a legal demand, unclaimed property of a convict in State prison dying before his release becomes the property of the State (3 Comp. Laws 1929, § 17554).

6. SAME—PURPOSE OF ESCHEAT.

   Where there appears to be lack of ownership of real or personal property the State takes it over to conserve for any person who might ultimately establish his right, or otherwise for the common benefit of the people of the State.

7. ACTION—DECLARATION OF RIGHTS.

   The proceeding by which a court makes a binding declaration of rights, pursuant to statutory authority, is not a substitute for regular action (3 Comp. Laws 1929, §§ 13903–13909).

8. SAME—DECLARATION OF RIGHTS—CONSTRUCTION OF STATUTES.

   Construction of act amending the escheats law will not be considered in a proceeding for a declaration of rights except as it may be necessary in a determination of the constitutional

Effect of a declaration of rights, see Restatement, Judgments, § 77.

questions involved.; construction of other provisions and determination of the legal status of particular transactions where an actual controversy might hereafter exist between persons not parties herein and where extraneous or special circumstances might control a decision having no proper place in such proceeding (3 Comp. Laws 1929, § 13455 *et seq.*, as amended by Act No. 170, Pub. Acts 1941; §§ 13903–13909).

9. JUDGMENT—DECLARATION OF RIGHTS—STATUTES.

The statute authorizing proceedings for declaratory judgments applies to cases of actual controversy and declarations of rights made thereunder have the effect of final judgments and will be *res judicata,* hence all the interested parties must be before the court (3 Comp. Laws 1929, §§ 13903–13909).

10. ACTION—DECLARATION OF RIGHTS—JURISDICTION.

The exercise of jurisdiction under the declaratory judgment act is discretionary with the court, and where no consequential relief is sought, will be exercised with great care, extreme caution, and only where there are special circumstances demanding it (3 Comp. Laws 1929, §§ 13903–13909).

11. SAME—DECLARATIONS OF RIGHTS—FUTURE RIGHTS.

Under the declaratory judgment act the court will not decide as to future rights but will wait until the event has happened, unless special considerations otherwise require (3 Comp. Laws 1929, §§ 13903–13909).

12. SAME—DECLARATION OF RIGHTS—CONTINGENT MATTERS.

A declaration of rights will not be made in a matter where the interest of the plaintiff is merely contingent upon the happening of some event (3 Comp. Laws 1929, §§ 13903–13909).

13. SAME—DECLARATION OF RIGHTS—SPECIAL STATUTORY JURISDICTION.

A court will not entertain a proceeding for declaration of rights when no consequential relief is sought if the. effect is to interfere with the rights of a party to appeal to a court having jurisdiction of the particular matter by statute (3 Comp. Laws 1929, §§ 13903–13909).

14. SAME—DECLARATION OF RIGHTS—DISPUTED FACTS.

Ordinarily a court will refuse a declaration of rights which can be made only after a judicial investigation of disputed facts, especially .where the disputed questions of fact will be the subject of judicial investigation in a regular action (3 Comp. Laws 1929, §§ 13903–13909).

15. SAME—DECLARATION OF RIGHTS—POSSIBLE CAUSES OF ACTION—WAIVER.

A declaration of rights cannot be had in respect of a cause of action which, it is merely apprehended or feared, defendant may assert, where he has made no claim against the plaintiff thereon, although he refuses to waive any rights thereunder (3 Comp. Laws 1929, §§ 13903–13909).

16. SAME—DECLARATION OF RIGHTS—ACTUAL CONTROVERSY—EQUITY.

A requisite to a proceeding under the declaratory judgment act is that there be an actual controversy over a specific issue to be set up in the pleadings in order that a binding declaration of rights may be made thereon since the proceeding is special, is not a substitute for the regular actions, and is not an exercise of general equity jurisdiction in which the court may grant consequential relief under a general prayer or upon general equitable considerations (3 Comp. Laws 1929, §§ 13903–13909).

17. SAME—DECLARATION OF RIGHTS—CHANGE OF CIRCUMSTANCES.

The court in a proceeding for a declaration of rights will not decide as to future rights, especially where, by reason of extraneous circumstances creating estoppel or otherwise, the situation may become so changed that a declaration now might be obsolete when the need for it arises (3 Comp. Laws 1929, §§ 13903–13909).

18. SAME—DECLARATION OF RIGHTS—ESCHEATS—MATTERS IN CONTROVERSY.

Determination as to legal status of certain deposits under act amending the escheat law, as to application of the act to debts and choses in action, and as to persons not parties to proceeding for declaration of rights, not being matters actually in controversy, do not come within the proper purview of the declaratory judgment statute (3 Comp. Laws 1929, § 13455 et seq., as amended by Act No. 170, Pub. Acts 1941; §§ 13903–13909).

19. APPEAL AND ERROR—QUESTIONS REVIEWABLE—DECLARATION OF RIGHTS—CROSS APPEAL.

On plaintiff depositaries' appeal from decree in proceeding against certain State officers for declaration of rights as to an act amending the escheat law, where trial court decreed that provision giving attorney general the same powers in examining books and records as provided by statute for examination of banks was unconstitutional, that acquisition of realty by adverse possession prior to effective date of amend-

atory act need not be reported, and that persons acquiring
same could not be deprived thereof under the act and that a
similar conclusion followed where Federal and State statutes
extinguished liability unless suit were brought within a speci-
fied time, such decretal provisions are not before Supreme
Court for review in the absence of cross appeal by defendant
State officers (3 Comp. Laws 1929, § 13455 *et seq.*, as
amended by Act No. 170, Pub. Acts 1941; §§ 13903–13909).

20. SAME—QUESTIONS REVIEWABLE—DECLARATION OF RIGHTS—CON-
STRUCTION OF STATUTES.

Defendant State officers' concessions as to construction of act
amending escheat law removed contentions of plaintiff de-
positaries from controversy on latter's appeal from decree
in proceeding for declaration of rights especially as to in-
terpretation of term ''deposit,'' notwithstanding such matters
might otherwise be properly determinable in a proceeding for
a binding declaration of rights (3 Comp. Laws 1929, § 13455
*et seq.*, as amended by Act No. 170, Pub. Acts 1941; §§ 13903–
13909).

21. CONSTITUTIONAL LAW—COURTS—STATUTES.

The enactment of legislation is not within the province of the
court.

22. ACTION—DECLARATION OF RIGHTS—ANTICIPATED CONTROVERSIES..

A court does not pass upon merely anticipated controversies in
a proceeding for a binding declaration of rights (3 Comp.
Laws 1929, §§ 13903–13909).

23. SAME—DECLARATION OF RIGHTS—STATUTES—ISSUES.

There is no legal objection to the statute providing for a bind-
ing declaration of rights if, in practical application, it is
limited to bona fide justiciable issues (3 Comp. Laws 1929,
§§ 13903–13909).

24. APPEAL AND ERROR—QUESTIONS REVIEWABLE—CONSTITUTIONAL
LAW—CONSTRUCTION OF STATUTES.

On appeal from decree in depositaries' proceeding against cer-
tain State officers for a binding declaration of rights under
an act amending the escheat law, the Supreme Court is
limited in considering constitutionality of amendment to a
determination of whether the statute is unconstitutional on
the asserted grounds and to such construction of the act as
may be necessary to determination of constitutional questions
raised (3 Comp. Laws 1929, § 13455 *et seq.*, as amended by
Act No. 170, Pub. Acts 1941; §§ 13903–13909).

25. STATUTES—CONSTRUCTION.

Courts are bound, whenever possible, so to construe statutes as to give them validity and a reasonable operation.

26. CONSTITUTIONAL LAW—CONSTRUCTION OF STATUTES.

The validity of a statute must be sustained unless it is prohibited by the express language of the Constitution or by necessary implication and the conflict between the Constitution and statute must be palpable and free from reasonable doubt.

27. STATUTES—CONSTRUCTION AS VALID.

A court has a duty to adopt such construction of an act, if admissible, as will uphold its validity rather than destroy a legislative enactment.

28. CONSTITUTIONAL LAW—STATUTES—VALIDITY—PRESUMPTIONS.

That cases may arise to which a statute can have no constitutional application is no reason for declaring the statute unconstitutional, since it is to be presumed that the legislature intended to enact a constitutional statute and did not intend to exceed the constitutional limits of its authority.

29. STATUTES—COMMON SENSE—CONSTRUCTION.

Since the rules of common sense apply to the construction of statutes the elimination of meaningless words does no violence to a common-sense reading of the act.

30. CONSTITUTIONAL LAW—STATUTES—RESOLUTION OF DOUBTFUL QUESTIONS.

A statute must be plainly at variance with some provision of the Constitution before a court will so declare it and doubtful questions will be resolved in favor of the validity of the legislative act.

31. STATUTES—CONSTITUTIONAL LAW—CONSTRUCTION.

The presumption in favor of the constitutionality of an act justifies a construction which is rather against the natural interpretation of the language used, if necessary to sustain the law.

32. CONSTITUTIONAL LAW—AMENDMENT AND MODIFICATION OF STATUTES.

It is not within the meaning of the provision of the Constitution requiring the re-enactment and publication at length of the section or sections amended that, upon the passage of each new law, all prior laws which it may modify by implication shall be re-enacted and published at length as modified (Const. 1908, art. 5, § 21).

33. ESCHEATS—CONSTRUCTION OF STATUTES—MODIFICATION OF STAT-
UTE OF LIMITATIONS.

The escheat law is an act referring to a special subject, is com-
plete in itself and removes escheat proceedings from the opera-
tion and effect of the general statute of limitations and
thereby merely modifies the effect of the statute of limitations
only to that extent; hence the constitutional provision relating
to amendment of statutes was not violated by a failure to re-
enact and republish the statute of limitations at length (Const.
1908, art. 5, § 21; 3 Comp. Laws 1929, § 13455 *et seq.*, as
amended by Act No. 170, Pub. Acts 1941; §§ 13964–13996,
as amended by Act No. 72, Pub. Acts 1941).

34. APPEAL AND ERROR—QUESTIONS REVIEWABLE—CONSTRUCTION OF
STATUTES—ESCHEATS—REALTY—DUE PROCESS.

Since none of the plaintiff depositaries in proceeding against
certain State officers for a binding declaration of rights under
act amendatory of the escheat law claim to hold title to real
estate by adverse possession and trial court decreed that per-
sons who had actually acquired real estate by adverse posses-
sion prior to the effective date of the amendatory act could
not be deprived thereof under the act and need not make re-
ports relative thereto, and no cross appeal was taken, ques-
tion of whether the amendatory act was unconstitutional be-
cause it deprived plaintiffs of title or possession of real estate
is not reviewed (3 Comp. Laws 1929, § 13455 *et seq.*, as
amended by Act No. 170, Pub. Acts 1941; §§ 13903–13909).

35. SAME—QUESTIONS REVIEWABLE—CONSTRUCTION OF STATUTES—
PARTIES—RES JUDICATA.

On appeal from decree rendered in proceeding for a binding
declaration of rights the Supreme court does not speculate
as to what might be the construction of a statute not involved
therein if an actual controversy were presented in a regular
action by parties who would be bound by the outcome
(3 Comp. Laws 1929, §§ 13903–13909).

36. ESCHEATS—CONSTRUCTION OF STATUTES—STATUTE OF LIMITA-
TIONS—DEBTS.

The escheat law as amended is not to be construed as providing
that *all* unpaid obligations and debts are escheatable and may
be collected by the State after seven years, that under the
amendatory act a debt outlawed after six years under the
statute of limitations may be collected by the State after
seven years under the escheat law and thereafter recovered by
the original creditor by, in effect, obtaining payment from the

State (3 Comp. Laws 1929, § 13455 *et seq.*, as amended by Act No. 170, Pub. Acts 1941; 3 Comp. Laws 1929, §§ 13964–13996, as amended by Act No. 72, Pub. Acts 1941).

37. SAME—PROPERTY AND DEPOSITS AFFECTED.

The escheat law is intended to refer to property of a person dying intestate leaving no heirs; abandoned, unclaimed or uncalled-for property, property of disappeared persons who are legally dead, deposits of money and property in the "possession or control" of another for which he may be accountable to the "depositor" (3 Comp. Laws 1929, § 13455 *et seq.*, as amended by Act No. 170, Pub. Acts 1941).

38. SAME—REPORTS—JUDGMENT.

The filing of a report required under the escheat law of one in the possession or control of property does not *ipso facto* effect an escheat of such property to the State as such property becomes "escheated" only by decree of the court (3 Comp. Laws 1929, § 13455 *et seq.*, as amended by Act No. 170, Pub. Acts 1941).

39. SAME—STATE—ESTABLISHMENT OF OWNERSHIP.

At any time after property gets into the possession and control of the State under the escheat law, anyone who establishes his right can claim and receive his property or the net proceeds therefrom (3 Comp. Laws 1929, § 13455 *et seq.*, as amended by Act No. 170, Pub. Acts 1941).

40. CONSTITUTIONAL LAW—DUE PROCESS—ESCHEATS.

The transfer of possession, custody and control from depositaries or bailees of unclaimed, uncalled-for, abandoned property or property of missing or disappeared persons, after a lapse of time, to the State, to conserve the same for the benefit of the actual owner if he claims it at some future time in accordance with statutory procedure, does not constitute a taking of property without due process of law (U. S. Const. am. 14, § 1; Mich. Const. 1908, art. 2, § 16; 3 Comp. Laws 1929, § 13455 *et seq.*, as amended by Act No. 170, Pub. Acts 1941).

41. ESCHEATS—APPOINTMENT OF ADMINISTRATOR.

The appointment of an administrator of an alleged escheated estate does not finally adjudicate the property rights of any person in such estate (3 Comp. Laws 1929, § 13455 *et seq.*, as amended by Act No. 170, Pub. Acts 1941).

42. Depositaries—Transfer of Title of Deposited Property—
Statute of Limitations.

The fact that a depositary may hold property deposited longer
than the time allowed the depositor to bring suit for the same
does not transfer ownership to the depositary as the de-
positor may bring suit and obtain a binding and valid judg-
ment against the depositary after the cause of action is out-
lawed unless the latter appears and pleads the affirmative de-
fense of the statute of limitations (3 Comp. Laws 1929,
§§ 13964–13996, as amended by Act No. 72, Pub. Acts 1941).

43. Limitation of Actions—Realty—Personal Property—Debt.

While the removal of the bar of the statute of limitations by
statute passed after the bar had become perfect and title to
real or tangible personal property had been acquired by pre-
scription would deprive such person of his property without
due process of law, a like result would not necessarily follow
in the case of a debt since time may vest a right of property
but does not pay a debt (3 Comp. Laws 1929, §§ 13964–13996,
as amended by Act No. 72, Pub. Acts 1941).

44. Contracts—Consideration—Debt Barred by Time.

A debt barred by time is a sufficient consideration for a new
assumpsit.

45. Limitation of Actions—Nature of Plea.

The statute of limitations is not a part of a contract but is a
personal privilege accorded by law for reasons of public
expediency and only disqualifies the plaintiff from recovering
his debt by suit if defendant timely relies on such plea
(3 Comp. Laws 1929, §§ 13964–13996, as amended by Act
No. 72, Pub. Acts 1941).

46. Same—Removal of Statutory Bar by Legislature.

The right to defeat a just debt by the statute of limitations is
a right which may be removed by the legislature.

47. Constitutional Law—Statutes of Limitations—Retroactive
Effect.

The legislature may pass statutes of limitation and give them
retroactive effect.

48. Escheats—Statute of Limitations—Retroactive Effect—
Impairment of Contract Obligations.

Act amending the escheat law, which modified the effect of the
general statute of limitations so as to render it inoperative as
to certain escheatable property and clearly indicated as having
been intended to be effective retroactively did not constitute

an unconstitutional impairment of contract obligations and vested rights (U. S. Const. art. 1, § 10; Mich. Const. 1908, art. 2, § 9; 3 Comp. Laws 1929, § 13455 *et seq.*, as amended by Act No. 170, Pub. Acts 1941; §§ 13964–13996, as amended by Act No. 72, Pub. Acts 1941).

49. LIMITATION OF ACTIONS—SUSPENSION OF OPERATION—IMPAIRMENT OF OBLIGATION OF CONTRACT.

A statute suspending the running of the statute of limitations may not be held unconstitutional as an impairment of the obligation of contract since it pertains to the remedy and not to the essence of the contract.

50. STATUTES—CONSTRUCTION—ABSURD CONSEQUENCES.

The fundamental rule of construction of statutes is to ascertain and give effect to the intention of the legislature and a construction leading to an absurd consequence should be disregarded.

51. SAME—CONSTRUCTION—INCONSISTENCIES.

Piecemeal legislation which contains apparent inconsistencies and is not plain and unambiguous is subject to judicial construction.

52. SAME—CONSTRUCTION—DECLARATION OF RIGHTS.

The desirability or propriety of a statute is not for the court nor may it rewrite statute law in a proceeding for a binding declaration of rights.

53. SAME—CONSTRUCTION—INTENT.

A court is compelled to construe statutes in accordance with well-defined rules of statutory construction and in such a manner as to avoid constitutional pitfalls, if this can be reasonably done within the legislative intent.

54. SAME—SEVERANCE.

By the elimination of parts of an act which are inapplicable or void the act is not destroyed in its entirety where the remainder is found operable.

55. COSTS—PUBLIC QUESTION—CONSTRUCTION OF STATUTES—ESCHEATS.

No costs are awarded in proceeding for a binding declaration of rights involving construction of an act amending the escheats law, a public question being involved (3 Comp. Laws 1929, § 13455 *et seq.*, as amended by Act No. 170, Pub. Acts 1941).

Appeal from Ingham; Carr (Leland W.), J. Submitted June 18, 1943. (Docket No. 15, Calendar No. 42,133.) Decided December 29, 1943. Rehearing denied February 24, 1944.

Bill by Evans Products Company, a Delaware corporation, against State Board of Escheats and others for decree declaring Act No. 170, Pub. Acts 1941, unconstitutional. Pere Marquette Railway Company and New York Central Railroad Company, Michigan corporations, and Consumers Power Company, a Maine corporation, intervened as parties plaintiff. Decree declaring statute unconstitutional in one part only. Plaintiff and intervening plaintiffs appeal. Modified and affirmed.

*Milburn & Semmes* (*James McEvoy, Jr.,* of counsel), for plaintiff Evans Products Company.

*John C. Shields, Glenn C. Wilber* and *Edward H. Goodman,* for Pere Marquette Railway Company.

*John J. Danhof* and *William A. Alfs,* for New York Central Railroad Company.

*William R. Roberts* and *Brownell & Gault* (*Ralph E. Gault,* of counsel), for Consumers Power Company.

*Herbert J. Rushton,* Attorney General, *Edmund E. Shepherd,* Solicitor General, *Arthur L. Fitch* and *Daniel J. O'Hara,* Assistants Attorney General, for defendants.

Boyles, C. J. Evans Products Company, a Delaware corporation, filed a petition for a declaration of rights, in the circuit court for Ingham county, under Act No. 36, Pub. Acts 1929 (3 Comp. Laws

1929, §§ 13903–13909 [Stat. Ann. §§ 27.501–27.507]). Subsequently, the Consumers Power Company, Pere Marquette Railway Company, and the New York Central Railroad Company upon leave granted in the court below were allowed to intervene as plaintiffs. The defendants constitute the State board of escheats, the attorney general, and the State public administrator. In their petitions plaintiffs asked the court to hold Act No. 170, Pub. Acts 1941 (Comp. Laws Supp. 1943, § 13458–1 *et seq.*, Stat. Ann. 1943 Cum. Supp. § 26.1021 *et seq.*), unconstitutional, to construe the act, and to restrain defendants from enforcing said act. The lower court granted a temporary injunction to that effect. The case was submitted on the pleadings and an agreed statement of facts and the court held the act constitutional within certain limitations as construed by the court. All plaintiffs appeal.

Act No. 170, Pub. Acts 1941, under challenge in this case, purports to amend the escheat law (Act No. 238, Pub. Acts 1897, as amended [3 Comp. Laws 1929, § 13455 *et seq.* (See Comp. Laws Supp. 1940, 1942, § 13458–1 *et seq.*, Stat. Ann. and Stat. Ann. 1943 Cum. Supp. § 26.1021 *et seq.*)]).

The facts are not in dispute. Plaintiffs are "depositories" as defined in section 4b of said Act No. 170. Seven years or more prior to the effective date of Act No. 170, plaintiffs became indebted or accountable to certain natural persons, copartnerships, corporations, associations, both residents and nonresidents of Michigan, as depositors of money or property, which indebtedness or accountability has not been extinguished by payment or delivery, and plaintiffs are still in possession of such property. In some instances plaintiffs have not contacted or had any business dealings, either directly or indirectly, with the depositors for more than

seven years prior to the effective date of Act No.
170. Evans Products Company alleges, and defend-
ants admit, that it is in the possession of moneys,
credits, securities, or other intangible property at
one time carried upon its books of account in the
name of or held for the account of or owing to nat-
ural persons, copartnerships, companies and corpo-
rations where no dealings or transactions have been
had with respect thereto with such natural persons,
copartnerships, companies or corporations for a
period of seven years or more. Such property spe-
cifically includes unpaid wages, accounts payable for
the purchase of goods, wares and merchandise, un-
claimed or uncalled-for dividends upon capital
stock, and moneys deposited with said plaintiff upon
uncompleted transactions where upon completion
of the transaction the deposit was to be applied as a
part of the total consideration and where the trans-
action was never completed. The Consumers Power
Company alleges, and defendants admit, that it has
in its possession moneys, credits, securities, or other
intangible personal property at one time carried on
its books in the name of or held for the account of
or owing to natural persons, copartnerships and
corporations where no dealings or transactions have
been had with respect thereto with such persons for
a period of seven years or more, including un-
claimed security deposits, unclaimed wages, un-
claimed dividends upon its capital stock, unclaimed
checks other than checks for dividends on its capital
stock, and book balances. Said security deposits
consist of cash deposits made by former customers
of Consumers Power Company as a guarantee or
security for the prompt payment of bills for electric,
gas, water, and steam heat service furnished by it,
upon which deposits the company pays interest un-
til the deposit is refundable, provided the customer

takes service for at least three consecutive months. Said deposit is refundable to the customer with accrued interest, less any indebtedness to the company, when service is discontinued, or in the absence of discontinuance whenever the customer's credit is satisfactorily established. The plaintiff railroad companies allege, and defendants admit, that they are common carriers doing an international and interstate business, subject to the provisions of the interstate commerce act and the regulations of the interstate commerce commission, that they have in their possession moneys, credits, securities, or other intangible personal property at one time carried on their books in the name of or held for the account of or owing to others where no dealings or transactions have been had with respect thereto with such persons for seven years or more, including unpaid wages, funds deposited with fiscal agents and fiduciaries, prepaid transportation charges, unclaimed and refused personal property, unclaimed overcharges, damages not based on overcharges, accounts payable for the purchase of goods, wares and merchandise, unclaimed dividends on common stock. Defendants admit that the attorney general has served on plaintiffs a demand for report of escheated property, pursuant to the provisions of section 6a of said Act No. 170, and plaintiffs assert that for various reasons compliance with such demand is impossible.

Plaintiffs assert that Act No. 170 is unconstitutional in its entirety for two reasons. They claim (1) that Act No. 170, Pub. Acts 1941, violates article 5, § 21, of the Michigan Constitution (1908) in that it alters, amends and repeals by implication certain sections of the statute of limitations (3 Comp. Laws 1929, §§ 13964–13996, as amended * [Stat. Ann.

---

* See Act No. 72, Pub. Acts 1941 (Comp. Laws Supp. 1942, § 13976, Stat. Ann. 1943 Cum. Supp. § 27.605).—Reporter.

§§ 27.593-27.634]) ; and (2) that Act No. 170, Pub. Acts 1941, deprives plaintiffs of their property without due process of law in violation of article 2, § 16, of the Michigan Constitution, and the Fourteenth Amendment to the Constitution of the United States. Plaintiffs also propound certain other questions which will be referred to later.

A review of the general purpose and trend of the Michigan escheat law and of the changes effected by Act No. 170, Pub. Acts 1941, is essential to a proper understanding of the questions raised for consideration.

"In passing upon the constitutionality of a statute, it is of first importance to be mindful of the subject matter to which the statute pertains or is applicable." *Braun* v. *McPherson,* 277 Mich. 396, 401.

The governor and judges of Michigan Territory adopted an escheat law in 1818,[*] and throughout the early statutes passed in 1842 [†] and 1846,[‡] until Act No. 238, Pub. Acts 1897 (3 Comp. Laws 1929, § 13455 *et seq.* [Stat. Ann. § 26.1021 *et seq.*]), became effective, the law of escheats in Michigan was predicated on the idea that the State should claim lands or other property by reason of the owners thereof dying intestate leaving no legal heirs. Likewise, beginning with the earliest statutes of descent and distribution of the property of a deceased person (Rev. Stat. 1846, chap. 67, § 1 [9], chap. 70, § 1) and down through a succession of amendments to the present statutes of descent and distribution, still a part of our statute law (Act No. 288, chap. 2, §§ 80, 93, Pub. Acts 1939 [Comp. Laws Supp. 1940,

[*] See 1 Terr. Laws, p. 356, § 1.
[†] See Act No. 68, Pub. Acts 1842 (1 Comp. Laws 1915, §§ 279–281) ; *Crane* v. *Reeder,* 21 Mich. 24, 22 Mich. 322, 25 Mich. 303.—REPORTER.
[‡] See Act No. 151, Pub. Acts 1846 (3 Comp. Laws 1929, § 13454 [Stat. Ann. § 26.1011]).—REPORTER.

§§ 16289-2 (80), 16289-2 (93), Stat. Ann. 1942 Cum. Supp. §§ 27.3178 (150), 27.3178 (163)]), if one dies intestate without heirs or kindred, his estate escheats to the people of the State. Other statutes of similar import have long been in effect. Under chapter 127 of the Revised Statutes of 1846 still in effect (2 Comp. Laws 1929, §§ 9014-9025 [Stat. Ann. §§ 18.721-18.732]), the proceeds from sale of certain unclaimed property escheats to the State. Money or property found on the body of an unknown deceased person may ultimately pass into the State treasury (3 Comp. Laws 1929, §§ 17419, 17420 [Stat. Ann. §§ 28.1185, 28.1186]). In absence of a legal demand, unclaimed property of a convict in State prison dying before his release becomes the property of the State. 3 Comp. Laws 1929, § 17554 (Stat. Ann. § 28.1381). The doctrine of the law of escheats is well established, that where there appears to be lack of ownership of real or personal property the State takes it over to conserve for any person who might ultimately establish his right, or otherwise for the common benefit of the people of the State. Until 1897 this doctrine was usually limited to the property of persons dying intestate leaving no legal heirs.

Enlarging the earlier doctrine of escheats, the legislature, in enacting Act No. 238, Pub. Acts 1897, put into said act, in addition to the provisions regarding the escheat of lands and property of persons dying intestate without legal heirs, seven sections (5-11, inclusive [3 Comp. Laws 1929, §§ 13459-13465, inclusive]) directing the attorney general to protect the interests of the State in uncalled-for deposits of money and securities made with any person, copartnership, company or corporation engaged in the business of banking; banks and trust companies were required to report to the commissioner of

banking a truthful statement of the persons, amounts and other details regarding deposits where there had been no dealings in relation thereto for 20 years; penalties were provided for noncompliance, and it was made the duty of the attorney general to file a bill in chancery to enforce the act. The act provided that if it appeared that any bank or trust company had a deposit of any money or security, no dealings with the depositor for seven years, that there was good reason to believe such depositor to be dead and that his estate would escheat to the State, the attorney general should have his estate administered as a deceased person, the proceeds disposed of as escheated property, and turned over to the custody of the State board of escheats. At the time of the adoption of the 1897 act, the probate code of the State contained no provision for the general administration of the estates of missing persons. However, following the decision in *Beckwith* v. *Bates,* 228 Mich. 400 (37 A. L. R. 819), Act No. 205, Pub. Acts 1925, was passed to provide in detail for such procedure. The provisions of this act are now set forth in the probate code (Act No. 288, chap. 5, Pub. Acts 1939 [Comp. Laws Supp. 1940, §§ 16289-5 (1)-16289-5 (31), Stat. Ann. 1942 Cum. Supp. §§ 27.3178(321)-27.3178 (351)]).

Aside from minor amendments to Act No. 238, Pub. Acts 1897, no further legislation in respect to escheats was passed until 1933, when three amendatory acts were passed by the legislature. Act No. 40, Pub. Acts 1933, added a new section (6a) and amended section 7; Act No. 45, Pub. Acts 1933, added two new sections (10a and 10b). Act No. 171, Pub. Acts 1933, added five new sections (9a-9e, inclusive), applying to banks and trust companies under liquidation, and for the escheat of deposits of

money and securities in possession of a receiver for which no demand had been made for a certain period of time. In *Starr* v. *O'Connor* (C. C. A.), 118 Fed. (2d) 548, the circuit court of appeals for the sixth circuit held this amendment unconstitutional as applied to national banks, and the three circuit judges of Oakland county, sitting *en banc,* held said act unconstitutional *in toto.* No appeal was taken. In 1939 the legislature passed Act No. 299, Pub. Acts 1939, amending sections 5, 6, 6a, 7, 8, 9, 9a, 9b, 9c, 9d, 10, 10a and 23 of Act No. 238, Pub. Acts 1897. The purpose behind this act was to consolidate the amendments of 1933, eliminating the objectionable features, and to extend the provisions of Act No. 238 to require all persons, firms and corporations to file reports in respect to unclaimed or uncalled-for moneys, securities, credits and property of any kind, held by or in the possession or control of any person, firm or corporation in the name of or for the use and benefit of any other person, firm or corporation. This act, although it required every person, firm and corporation to file a report in respect to such property, did not contain any provision for the escheat of property of other than natural persons except that in the possession of a receiver. The Ingham circuit court held said act (Act No. 299, Pub. Acts 1939) unconstitutional because the provisions added to Act No. 238, Pub. Acts 1897, were extraneous to the general purpose indicated by the original title of the said act and hence violated article 5, § 21, of the Constitution of 1908. An appeal was taken by the State from this decision but was subsequently dismissed in view of the adoption by the legislature of Act No. 170, Pub. Acts 1941, now under challenge in the instant proceeding.

The title of the act was amended by Act No. 170, Pub. Acts 1941, to read:

"An act to provide for the discovery by the State board of escheats or the attorney general of escheated and escheatable estates, including abandoned property, and providing the procedure to declare such property escheated to the State, and for the disposition thereof, and declaring the statute of limitations not applicable to such proceedings."

Section 1 of Act No. 238, Pub. Acts 1897 (3 Comp. Laws 1929, § 13455 [Stat. Ann. § 26.1021]), was not amended. It still reads:

"SECTION 1. That the attorney general of this State, shall, as hereinafter provided, take charge of all matters pertaining to lands or other property which may have escheated or which may hereafter escheat to the State by reason of the owners thereof dying intestate and leaving no legal heirs thereto."

Section 4a, added by Act No. 170, Pub. Acts 1941, places a limitation on the fees allowed to county public administrators in the administration of the estates of disappeared or missing persons.

Section 4b (also added) is largely responsible for the uncertainty now claimed by plaintiffs as a basis for holding the act void. It is as follows:

"SEC. 4b. The words 'person' or 'persons' as used in this act shall be understood and interpreted to mean and include a natural person, a copartnership, a company, an association, a bank, a trust company, a corporation, except municipal corporations, or any officer thereof, any governmental department, agency, instrumentality or official, a depository, a receiver, a trustee, a fiduciary, a debtor, a custodian, a liquidating officer, or any combination of natural persons.

"The words 'depositor' or 'depositors' as used in this act shall be understood and interpreted to mean and include any person, or persons, as above de-

fined, who or which is the legal or equitable owner or creditor entitled to the possession of any property, real, personal or mixed, including liquidated choses in action, which is in the possession or under the control of any other person, as above defined, who or which is indebted or accountable for any such property to such depositor.

"The word 'deposit' as used in this act shall be understood and interpreted to mean and include money, credits, securities, liquidated choses in action and property of any kind or nature.

"The word 'depository' as used in this act shall be understood and interpreted to mean and include any person, as above defined, who or which has in his or its possession or under its control any property, real, personal or mixed, including liquidated choses in action, for which he or it is indebted or accountable to any other person as depositor.

"The word 'escheated' as used in this act shall be understood and interpreted to refer to and include all property of whatever nature, the title to which has accrued and vested in the State by operation of any statute of this State, by reason of there being no known heirs, devisees, legatees or assignees of the last known owner.

"The word 'escheatable' as used in this act shall be understood to refer to and include all property of whatever kind or nature, including liquidated choses in action, over which the State has power to assume control by appropriate proceedings, by reason of its having lain dormant, unclaimed, uncalled for or abandoned as in this act provided."

Section 5 places the duty on the attorney general to protect the interests of the State in abandoned property held by any person for the use and benefit of any other persons.

Section 6 requires every person on the 30th of June of every year, after the effective date of the act, to file a report with the State board of escheats

in respect to any property held by such person for the use and benefit of any other person where no dealings have been had in respect to such property for a period of seven years.

Section 6a grants to the State board of escheats or the attorney general the right to make a demand for a report and imposes on the person receiving the demand the duty to file a report within 60 days thereafter. This section further provides as follows:

"In making such examination the State board of escheats or the attorney general shall have all the powers with respect to examination of the books and records of the depositories making such reports as are provided by the banking laws of this State with respect to examination of banks."

(This provision was held unconstitutional by the lower court in the case at bar.)

Sections 7 and 8 relate to the penalty provided for failure of persons to file reports and the collection of such penalty by the attorney general.

Section 9 grants to the attorney general the additional power to bring a proceeding in chancery to enforce the filing of a report.

Sections 9a and 9b relate to "deposits" belonging to others in the possession of a liquidating officer of a person, firm or corporation whose assets are in process of liquidation or receivership, and provide that where no claim has been filed with such liquidating officer and no dealings have been had in respect to such deposit for a period of seven years such deposit shall escheat to the State and the procedure is set forth whereby the deposit may be claimed by the State.

Section 9b provides that where money, securities, credits or property of any kind has been unclaimed,

uncalled-for, or abandoned as set forth in section 13a for a period of seven years or more by the depositor or owner, the attorney general may bring a proceeding to declare such property escheated to the State.

Sections 10, 10a and 10b relate to the procedure to be followed by the attorney general in respect to the administration of property of missing persons and provide for the probating of the estates of more than one such missing person where the total amount involved is not in excess of $1,000.

Section 13a (added by Act No. 170) reads as follows:

"SEC. 13a. If any depositor, as hereinbefore defined, who or which has any money, credits, securities or property of any kind, which is in the possession or under the control of any depository, doing business, located or operating within this State, where no dealings or transactions have been had with respect to any such property between such depositor and the depository having possession or control of such property for a period of 7 years or more, such depositor shall be presumed to have abandoned such property, and such property shall escheat to this State.

"No statute of limitations of this State shall be a defense to any proceeding or action to escheat, have decreed escheated or abandoned any money, credits, securities or property of any kind to the State of Michigan, or any proceeding or action to secure possession of any such property by the State or anyone acting for and on behalf of the State."

Sections 22 and 23 relate to the manner in which escheated property may be recovered by the original owner, his heirs or assigns, and provide for indemnity to the depository turning property over to the State that may later be claimed by the original owner, his heirs or assigns. Section 24 is a severing clause.

In considering this appeal it is essential that we keep in mind the fact that the present proceeding is for a binding declaration of rights. The purpose and effect of the act authorizing courts·to make binding declarations of rights (Act No. 36, Pub. Acts 1929 [3 Comp. Laws 1929, §§13903–13909 (Stat. Ann. §§ 27.501–27.507)]) must not be overlooked. It is not a substitute for regular action. Plaintiffs ask that we construe various provisions of the act, determine the legal status of particular transactions where an actual controversy may hereafter exist between persons not now parties herein, and where extraneous or special circumstances may control a decision. Such questions have no proper place in this proceeding, and the construction of the act will not be here considered except as it may be necessary in a determination of the constitutional questions involved. In *Washington-Detroit Theatre Co.* v. *Moore,* 249 Mich. 673 (68 A. L. R. 105), the declaratory judgment act (*supra*) was held constitutional by this court, and in so holding the court restricted the use of the act to limits within which its constitutionality might be upheld. The court said:

"The present statute, while substantially identical with the former act (held unconstitutional in *Anway* v. *Grand Rapids Railway Co.,* 211 Mich. 592 [12 A. L. R. 26]) in other respects, eliminates the possibility of its being so construed. By its language it is brought into general harmony with the interpretation given the former act by Mr. Justice Sharpe. It provides in section 1 that it applies only to 'cases of actual controversy,' and contains a paragraph which has no counterpart in the former act:

"'Sec. 6. Declaration of rights made under this act shall have the effect of final judgments.'

"That the present act does not constitute a court a fountain of legal advice to fill the cups of loitering

wayfarers is also amply sustained by judicial
opinion. The courts of Scotland have been render-
ing declaratory judgments for over 300 years. In
England, they have been in vogue since 1852. They
are part of judicial systems in Canada. About con-
temporaneous with or since the *Anway Case,* 17 or
more American States have adopted identical or
similar laws. Many of the courts have spoken upon
them. It is of interest to note some of the adjudged
requirements of a proper case for declaratory relief,
especially as approved by American courts:

"1. The exercise of the jurisdiction is discretion-
ary with the court, and where no consequential re-
lief is sought, it will be exercised with great care, ex-
treme caution, and only where there are special cir-
cumstances demanding it. *Kariher's Petition,* 284
Pa. 455 (131 Atl. 265).

"2. There must be an actual and *bona fide* con-
troversy as to which the judgment will be *res judi-
cata.* Such a case requires that all the interested
parties shall be before the court (citing cases).

"3. The court will not decide as to future rights
but will wait until the event has happened, unless
special considerations otherwise require (citing
cases).

"4. A declaration will not be made in a matter
where the interest of the plaintiff is merely con-
tingent upon the happening of some event. *Hodges
v. Hamblen County,* 152 Tenn. 395 (277 S. W. 901).

"5. Where the court is asked for no consequential
relief, it will not entertain the case if the effect is to
interfere with the rights of a party to appeal to a
court having jurisdiction of the particular matter
by statute (citing cases).

"6. Ordinarily the court will refuse a declaration
which can be made only after a judicial investigation
of disputed facts, especially where the disputed ques-
tions of fact will be the subject of judicial investi-
gation in a regular action. *Newsum v. Interstate
Realty Co.,* 152 Tenn. 302 (278 S. W. 56).

"In addition to the foregoing, the British courts have another rule which does not seem to have been passed upon in this country:

"7. A declaration cannot be had in respect of a cause of action which, it is merely apprehended or feared, defendant may assert, where he has made no claim against the plaintiff thereon, although he refuses to waive any rights thereunder."

In *Village of Grosse Pointe Shores* v. *Ayres,* 254 Mich. 58, 62, we said:

"This is a proceeding under the declaratory judgment law, 3 Comp. Laws 1929, § 13903, to determine and declare the effect of these conditions, which plaintiff contends are void and defendants urge are valid.   The circuit court held with plaintiff.   The first consideration is to define the issue.

"A requisite to the proceeding is an actual controversy over a specific issue to be set up in the pleadings, in order that a binding declaration of rights may be made thereon.   The proceeding is special, is not a substitute for the regular actions, and is not an exercise of general equity jurisdiction in which the court may grant consequential relief under a general prayer or upon general equitable considerations.   *   *   *

"The court will not decide as to future rights, especially where, by reason of extraneous circumstances creating estoppel or otherwise, the situation may become so changed that a declaration now might be obsolete when the need for it arises."

In the appeal now before us, plaintiffs claim and in effect apprehend that the State board of escheats and the attorney general will construe certain words and terms in the act substantially in a certain manner, and to a certain effect.  If so, this would include situations not now before the court between the parties hereto.  We are asked to determine the legal status of certain "deposits," to determine whether

the act as worded applies to all debts and choses in action including persons not parties herein, and other issues concerning which the defendants expressly disclaim any intention to construe the act in the manner anticipated or apprehended by plaintiffs herein. These are not matters actually in controversy, and do not come within the proper purview of the declaratory judgment act. Some of these issues have been taken out of the scope of controversy now on appeal before us, by the court below, and by the concessions of counsel for the State. The lower court decreed unconstitutional the last paragraph of Act No. 170, § 6a, giving the attorney general the same powers in examining books and records as provided by the banking laws with respect to the examination of banks. The lower court also held that persons who have actually acquired real estate by adverse possession prior to the effective date of Act No. 170 cannot be deprived thereof under this act, nor need they make reports as to such property. The court also held that in instances in which legislative enactments, Federal or State, extinguish liability unless suit is brought within a specified time, a similar conclusion follows. No cross appeal was taken by the State from the decree, and these decretal provisions are not now before us for determination. We have no controversy now pending as to these pronouncements. We further note, from the brief filed by the attorney general, that defendants disclaim the construction of certain language in Act No. 170 which plaintiffs insist would render the act unconstitutional. We quote from defendants' final brief:

"2d. Since the word 'deposit' is defined in section 4b of the law of escheats, to include 'liquidated choses in action,' and the legislature undoubtedly intended to exclude unliquidated claims of any sort, it should

be held that a depository is not required by section 6 of the act to report ordinary 'debts'—such as grocers' bills or merchants' running accounts.

"3d. It is noted that section 4b defines the words 'depositor' or 'depositors' to include any person who is 'the legal or equitable *owner or creditor* entitled to the *possession* of any property, real, personal or mixed, including liquidated choses in action, which is under the *possession* or under the control of any other person * * * who or which is *indebted or accountable* for any such property to such depositor.'

"While the legislature has employed the broad terms 'creditor,' and 'indebted,' in defining a 'depositor,' it is clear that they did not intend to include within this particular class of transactions an ordinary 'debt,' but only property within the *possession* or under the control of a depository.

"And by that we do not mean to exclude any 'credits' as such.

"In short and in fine, we respectfully submit that the legislature intended to reach those 'depositories' who or which have in their possession or under their control money or other property which belong to another and which they as depositories are in no event entitled to retain.

"While it is true in a sense that such deposits are 'credits,' and may be recovered in an action at law (perhaps in the nature of an action *ex contractu*), that fact alone does not extend the scope of the act to include ordinary 'debts.' * * *

"If our construction of those sections of the law of escheats which pertain to 'deposits,' is deemed sound, then there is no occasion for considering the contention that 'it is not a governmental function for the State to collect debts owed private persons' (appellant's brief, p. 56).

"It is the purpose of the foregoing sections of our law of escheats, to protect and conserve for the true owner who has disappeared for a period of over

seven years, or for the missing heirs of such an owner, all property held in the possession of any person who is not lawfully entitled to retain it or to profit through the misfortune of others.''

The attorney general also removes certain other contentions of plaintiffs from the realm of a controversy now actually pending before us which might otherwise be properly determinable in a proceeding for a binding declaration of rights. The attorney general disclaims any intention on the part of defendants

''To constitute themselves a collecting agency for the benefit of individuals whose claims (based upon a *debt*) were already outlawed by the statute of limitations when Act No. 170, Pub. Acts 1941, took effect. And we must admit that the task of so construing section 13a in such a manner as to revive outlawed *debts* goes rather against the grain.

''Having conceded this much, we conceive it our duty to carry out the declared policy of the legislature in respect of abandoned or escheatable '*property*,' as distinguished from escheatable '*debts*,' and we perceive no valid reason why the holders of such property should be permitted to profit by retaining possession thereof on the theory that they have acquired title thereto by any rule of prescription.''

In passing, it is proper to suggest that the act might well be made plain and unambiguous as thus construed by the attorney general. However, the enactment of legislation is not within the province of the court, nor do we pass upon merely anticipated controversies in the instant form of proceeding now before us.

There is no legal objection to the statute providing for a binding declaration of rights if, in practical application, it is limited to bona fide justiciable issues. Having that in mind, our consideration is now

limited to determining whether the statute is unconstitutional on the asserted grounds, and to such construction of the act as may be necessary, incidental to a determination of the constitutional questions raised. In approaching the critical issues for decision, we observe certain well-known rules of law. Courts are bound, whenever possible, so to construe statutes as to give them validity and a reasonable construction (*Van Fleet* v. *Van Fleet,* 49 Mich. 610); courts should lean toward that construction which will give the statute force and validity (*Thomas Canning Co.* v. *Southern Pacific Co.,* 219 Mich. 388); the validity of a statute must be sustained unless it is prohibited by the express language of the Constitution or by necessary implication (*Child Welfare Society of Flint* v. *Kennedy School District,* 220 Mich. 290); and it is our duty to adopt such a construction, if admissible, which will uphold validity rather than destroy a legislative enactment (*People* v. *Lockhart,* 242 Mich. 491; *In re Harrand,* 254 Mich. 584). Since 1844 (*Green* v. *Graves,* 1 Doug. [Mich.] 351), it has been a frequently repeated rule in construing statutes in this State that a statute should not be declared unconstitutional unless the conflict between the Constitution and the statute is palpable and free from reasonable doubt.

"Instead of seeking for excuses for holding acts of legislative power to be void by reason of their conflict with the Constitution, or with certain supposed fundamental principles of civil liberty, the effort should be to reconcile them, if possible, and not to hold the law invalid unless the opposition between the Constitution and the law be such that the court feels a clear and strong conviction of their incompatibility with each other." *In re Watson,* 293 Mich. 263, 275.

"That cases may arise to which a statute can have
no constitutional application is no reason for declar-
ing the statute unconstitutional, since it is to be pre-
sumed that the legislature intended to enact a con-
stitutional statute and did not intend to exceed the
constitutional limits of its authority." *Township
of Clarence* v. *Dickinson* (syllabus), 151 Mich. 270.

"In approaching the consideration of a legislative
enactment with the purpose of passing upon its con-
stitutionality courts usually do and always should
strive to sustain its validity if that may be done
without doing actual violence to the language used
in the act. Every intendment favorable to a con-
clusion sustaining the law must be indulged in."
*Attorney General* v. *Detroit United Railway,* 210
Mich. 227, 253.

"We do not rewrite statutes, but it is elementary
that the rules of common sense shall apply to the
construction of statutes. Eliminating the meaning-
less words does no violence whatever to a common
sense reading of the act. * * * 'The act of the
legislature must be plainly at variance with some
provision of the Constitution before a court will so
declare it. Doubtful questions will be resolved in
favor of the validity of the legislative act.' " *At-
torney General, ex rel. Connolly,* v. *Reading,* 268
Mich. 224, 230.

"No rule of construction is better settled in this
country, both upon principle and authority, than
that the acts of a State legislature are to be pre-
sumed constitutional until the contrary is shown;
and it is only when they *manifestly* infringe some
provision of the Constitution that they can be de-
clared void for that reason. In cases of doubt,
every possible presumption, not clearly inconsistent
with the language and the subject matter, is to be
made in favor of the constitutionality of the act.

"The power of declaring laws unconstitutional
should be exercised with extreme caution, and never

where serious doubt exists as to the conflict.'' *Sears* v. *Cottrell,* 5 Mich. 250.

''There is always a presumption in favor of constitutionality, and this presumption justifies a construction which is rather against the natural interpretation of the language used, if necessary to sustain the law.'' *Osborn* v. *Charlevoix Circuit Judge,* 114 Mich. 655.

Having in mind the limitations within which we consider the questions for decision, is Act No. 170, Pub. Acts 1941, unconstitutional for the reasons asserted by plaintiffs on this appeal?

It is plaintiffs' contention that Act No. 170, Pub. Acts 1941, is unconstitutional because it alters and amends some sections and repeals other sections of the statute of limitations, hence violates article 5, § 21, of the Michigan Constitution (1908). The statute of limitations is expressly referred to only twice in Act No. 170, once in the title and again in section 13a. The reference in the title is as follows:

''An act to provide for the discovery by the State board of escheats or the attorney general of escheated and escheatable estates,  *  *  *  and declaring the statute of limitations not applicable to such proceedings.''

The reference to the statute of limitations in section 13a of the act is as follows:

''No statute of limitations of this State shall be a defense to any proceeding or action to escheat, have decreed escheated or abandoned any money, credits, securities or property of any kind to the State of Michigan, or any proceeding or action to secure possession of any such property by the State or anyone acting for and on behalf of the State.''

The statute of limitations is Act No. 314, chap. 9, Pub. Acts 1915 (judicature act) (3 Comp. Laws 1929, § 13964 *et seq.* [Stat. Ann. § 27.593 *et seq.*]). In

general, it limits the time within which actions may be brought in the courts of this State. The applicable part of article 5, § 21, of the Michigan Constitution of 1908, relied upon by plaintiffs, reads:

"No law shall be revised, altered or amended by reference to its title only; but the act revised and the section or sections of the act altered or amended shall be re-enacted and published at length."

The same identical language was used in the Constitution of 1850 (art. 4, § 25). The general principles governing the application of this constitutional provision were declared by Mr. Justice COOLEY in *People, ex rel. Drake,* v. *Mahaney,* 13 Mich. 481, and have been consistently adhered to in many later decisions of this court. Mr. Justice COOLEY wrote:

"If, whenever a new statute is passed, it is necessary that all prior statutes, modified by it by implication should be re-enacted and published at length as modified, then a large portion of the whole code of laws of the State would require to be republished at every session, and parts of it several times over, until, from mere immensity of material, it would be impossible to tell what the law was. If, because an act establishing a police government modifies the powers and duties of sheriffs, constables, water and sewer commissioners, marshals, mayors and justices, and imposes new duties upon the executive and the citizen, it has thereby become necessary to re-enact and republish the various laws relating to them all as now modified, we shall find, before the act is completed, that it not only embraces a large portion of the general laws of the State, but also that it has become obnoxious to the other provisions referred to, because embracing a large number of objects, only one of which can be covered by its title.

"This constitutional provision must receive a reasonable construction, with a view to give it effect.

The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words, or to substitute one phrase for another in an act or section which was only referred to but not republished, was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the Constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent.''

The Michigan escheat law is an act referring to a special subject and is complete in itself. It removes escheat proceedings from the operation and effect of the general statute of limitations and thereby merely modifies the effect of the statute of limitations only to that extent.

In *Attorney General, ex rel. Fuller,* v. *Parsell,* 100 Mich. 170, the court, in commenting on Justice COOLEY's conclusions in the *Mahaney Case, supra,* said:

''Under a similar, but more restrictive, constitutional provision, the supreme court of Nebraska said:

'' 'That an act, *complete in itself,* may so operate on prior acts as to materially change or modify them, without being within the mischief designed to be remedied by, or repugnant to, this provision of the Constitution, is doubtless true.' *Smails* v. *White,* 4 Neb. 353, 357.

"Applying that rule to this case, there is no room for holding that any one was, or can be, misled or deceived. Confusion can only be introduced into the law, in this case, by holding that the legislature did not intend to revise and consolidate, but, on the contrary, did deliberately intend to introduce endless confusion into the law."

Our conclusions as to the proper construction to be given Act No. 170 necessarily apply both to the question of constitutionality under article 5, § 21 (Const. 1908), and plaintiffs' second claim that the act violates the due process clauses of both State and United States Constitutions. To avoid repetition, we will consider the construction of the legislative intent as it may apply to the validity of Act No. 170, both under article 5, § 21, and in connection with its validity under the due process clauses of the State and United States Constitutions. Plaintiffs also claim that Act No. 170 is unconstitutional on the ground that it deprives them of property without due process of law, contrary to the due process provisions of the State Constitution (1908) (art. 2, § 16) and the United States Constitution (am. 14, § 1).

None of plaintiffs claims to hold title to real estate by adverse possession—in fact we do not find that plaintiffs claim to have in possession any real estate which might be affected by Act No. 170. This fact, together with the decree entered below, eliminates this question from the controversy in this proceeding for a binding declaration of rights. Act No. 170 is not unconstitutional as depriving plaintiffs of title or possession of real estate, within the scope of the present inquiry. We do not speculate what might be the construction of the act in that regard if an actual controversy were presented in a regular action by parties who would be bound by the outcome.

It is undoubtedly true that the statute of limitations is involved in the escheat law. Act No. 170 in express language eliminates the statute of limitations from "any proceeding or action to secure possession of any such property by the State or anyone acting for and on behalf of the State." It is also true that this provision, if construed as plaintiffs construe it, might be given the extreme effect of repealing the statute limiting the bringing of suit on personal actions to six years from the time the cause of action accrues. Plaintiffs construe Act No. 170 to mean that *all* unpaid obligations and debts are escheatable and may be collected by the State after seven years; that under Act No. 170 a debt outlawed after six years under the statute of limitations may be collected by the State after seven years under the escheat law; and that thereafter, under Act No. 170, the original creditor may come in and recover the proceeds, in effect obtain payment from the State.

The attorney general does not so construe Act No. 170, nor do we. It is true that "deposit" is defined in section 4b to include "credits" and "liquidated choses in action;" but this must be read and construed in the light of other provisions of the act. The act in its entirety obviously is intended to refer to property of a person dying intestate leaving no heirs (Act No. 238, Pub. Acts 1897, § 1, not amended by Act No. 170), abandoned, unclaimed or uncalled-for *property, property* of disappeared persons (legally dead), *deposits* of money, *property* in the "possession or control" of another for which he may be accountable to the "depositor." Section 6 of Act No. 170 requires the one in possession or control of such property to report the same to the State board of escheats. However, this property is not *ipso facto* escheated to the State in accordance

with or upon the filing of such report. The making of the report is required, and the property is "subject to escheat" or is "escheatable" to the State—but not yet escheated. Under section 9b of Act No. 170, where such *property* of any kind has been unclaimed, uncalled-for or abandoned for seven years or more by the "depositor" or owner thereof, the attorney general may "institute suit" in the name of the people, in circuit court in chancery, to escheat to the State such "unclaimed, uncalled-for, or abandoned property." It becomes "escheated" only by decree of the court. Likewise, under section 10, the attorney general or the State public administrator may take steps to administer the estate of any disappeared person, one presumed to be legally dead, after seven years; and the administrator appointed by the probate court may reduce the property of such person to his possession and control. Ultimately, if there are no known heirs, devisees, legatees or assigns of such person, the property or proceeds are assigned to the State board of escheats by the probate court. At any time after the property gets into the possession and control of the State, anyone who establishes his right can claim and receive his property or the net proceeds therefrom.

We fail to see how this procedure can be said to take property without due process of law. It merely transfers the possession, custody and control of certain property, under certain conditions, from private custody and control to that of the State. It surely is not contrary to public policy for the State to take over the possession, custody and control of unclaimed, uncalled-for, abandoned property, or that of missing, disappeared persons, after a lapse of time, to conserve the same for the benefit of the actual owner if he claims it at some future time.

"Escheat proceedings are not solely for the benefit of the State. Instead the statutory proceeding clearly contemplates that under certain defined conditions property becomes *prima facie* an escheat. Thereupon the State takes possession of the property or the proceeds thereof in the capacity of a conservator for the benefit of any person lawfully entitled to it. * * * Appointing an administrator of an alleged escheated estate does not finally adjudicate the property rights of any person in such estate." *Braun* v. *McPherson*, 277 Mich. 396.

As thus construed, Act No. 170 does not deprive plaintiffs herein of any property of their own at all. The fact that plaintiffs may hold such property longer than the time allowed the "depositor" to bring suit for the same, does not transfer ownership to them, as the "depository." In this State, an original owner or "depositor" may bring suit and obtain a binding and valid judgment against the "depository" after his cause of action is outlawed, unless the "depository" defendant appears in the suit and pleads the affirmative defense of the statute of limitations.

We quote at length from *Campbell* v. *Holt,* 115 U. S. 620, 623 (6 Sup. Ct. 209, 29 L. Ed. 483), with which we are in accord as applied to our construction of Act No. 170 under the circumstances of this case:

"It may, therefore, very well be held that, *in an action to recover real or personal property,* where the question is as to the removal of the bar of the statute of limitations by a legislative act passed after the bar has become perfect, such act deprives the party of his property without due process of law. The reason is, that, by the law in existence before the repealing act, the property had become the defendant's. Both the legal title and the real owner-

ship had become vested in him, and to give the act the effect of transferring this title to *plaintiff*, would be to deprive him of his property without due process of law.

"*But we are of opinion that to remove the bar which the statute of limitations enables a debtor to interpose to prevent the payment of his debt stands on very different ground.* (Italics ours)

"A case aptly illustrating this difference in the effect of the statute of limitations is found in *Smart* v. *Baugh*, 3 J. J. Marsh. (26 Ky.) 363, 364, in which the opinion was delivered by Chief Justice Robertson, whose reputation as a jurist entitles his views to the highest consideration. The action was detinue for a slave, and the defendant having proved his undisturbed possession of the slave for a period of time which would bar the action, but having failed to plead the statute of limitations, the question was whether he could avail himself of the lapse of time. 'The plea (said the court) is *non detinet* in the present tense, and under this plea anything which will show a better right in the defendant than in the plaintiff may be admitted as competent evidence. The plea puts in issue the plaintiff's right. Five years uninterrupted adverse possession of a slave not only bars the remedy of the claimant out of possession, but vests the absolute legal right in the possessor. Therefore, proof of such possession may show that the claimant has no right to the slave and cannot recover. Consequently it would seem to result, from the reason of the case, that the adverse possession may be proved under the general issue.' Answering the objection that in assumpsit and other actions the statute to be available must be pleaded, and by analogy should be pleaded in that case, he says: 'The same reason does not apply to assumpsit, because the statute of limitations does not destroy the right *in foro conscientiae* to the benefit of assumpsit, but only bars the remedy if the defendant chooses to rely on the bar. *Time does not*

*pay the debt, but time may vest the right of property.'* Again he says: 'This is perfectly true in detinue for a slave, because, in such a case, the lapse of time has divested the plaintiff of his right of property, and vested it in the defendant.   *   *   *   But it is not so in debt, because the statute of limitations does not destroy nor pay the debt.' 'This (he says) has been abundantly established by authority.   *   *   * A debt barred by time is a sufficient consideration for a new assumpsit. The statute of limitations only disqualifies the plaintiff to recover a debt by suit if the defendant rely on time in his plea. It is a personal privilege, accorded by law for reasons of public expediency; and the privilege can only be asserted by plea.'

"The distinction between the effect of statutes of limitation in vesting rights to real and personal property, and its operation as a defense to contracts, is well stated in *Jones* v. *Jones,* 18 Ala. 248.   See, also, Langdell's Equity Pleading, § 118 *et seq.*

"We are aware that there are to be found, in the opinions of courts of the States of the Union, expressions of the idea that the lapse of time required to bar the action extinguishes the right, and that this is the principle on which the statutes of limitation of actions rest.

"But it will be found that many of these are in cases where the suits are for the recovery of specific real or personal property, and where the proposition was true, because the right of the plaintiff in the property was extinguished and had become vested in the defendant. In others, the Constitution of the State forbade retrospective legislation. That the proposition is sound, that, in regard to debt or assumpsit on contract, the remedy alone is gone and not the obligation, is obvious from a class of cases which have never been disputed.   *   *   *

"In this case of *Townsend* v. *Jemison,* 9 How. (50 U. S.) 407 (13 L. Ed. 194), the opinion of the court contains an elaborate examination of the whole ques-

tion. It explains the difference between statutes whose effect is to vest title to property by adverse possession, and those which merely affect the remedy, as in case of contract. The result of it is summed up in a single sentence: 'The rule in the courts of the United States, in respect to pleas of the statutes of limitation, has always been that they strictly affect the remedy and not the merit.' * * *

"The implied obligation of defendant's intestate to pay his child for the use of her property remains. It was a valid contract, implied by the law before the statute began to run in 1866. Its nature and character were not changed by the lapse of two years, though the statute made that a valid defense to a suit on it. But this defense, a purely arbitrary creation of the law, fell with the repeal of the law on which it depended.

"It is much insisted that this right to defense is a vested right, and a right of property which is protected by the provisions of the Fourteenth Amendment.

"It is to be observed that the word vested right is nowhere used in the Constitution, neither in the original instrument nor in any of the amendments to it.

"We understand very well what is meant by a vested right to real estate, to personal property, or to incorporeal hereditaments. But when we get beyond this, although vested rights may exist, they are better described by some more exact term, as the phrase itself is not one found in the language of the Constitution.

"We certainly do not understand that a right to defeat a just debt by the statute of limitations is a vested right, so as to be beyond legislative power in a proper case. The statutes of limitation, as often asserted and especially by this court, are founded in public needs and public policy—are arbitrary enactments by the law-making power. *Tioga Railroad* v. *Blossburg & Corning Railroad,*

20 Wall. (87 U. S.) 137, 150 (22 L. Ed. 331). And other statutes, shortening the period or making it longer, which is necessary to its operation, have always been held to be within the legislative power until the bar is complete. The right does not enter into or become a part of the contract. No man promises to pay money with any view to being released from that obligation by lapse of time. It violates no right of his, therefore, when the legislature says, time shall be no bar, though such was the law when the contract was made. The authorities we have cited, especially in this court, show that no right is destroyed when the law restores a remedy which had been lost.   *   *   *

"We are unable to see how a man can be said to have *property* in the bar of the statute as a defense to his promise to pay. In the most liberal extension of the use of the word property, to choses in action, to incorporeal rights, it is new to call the defense of lapse of time to the obligation to pay money, property. It is no natural right. It is the creation of conventional law.

"We can understand a right to enforce the payment of a lawful debt. The Constitution says that no State shall pass any law impairing this obligation. But we do not understand the right to satisfy that obligation by a protracted failure to pay. We can see no right which the promisor has in the law which permits him to plead lapse of time instead of payment, which shall prevent the legislature from repealing that law, because its effect is to make him fulfil his honest obligations."

Plaintiffs assert that in any event Act No. 170 must be held to be prospective only, and not to be given any retroactive effect. In substance, this would mean that the act does not apply to the facts and circumstances set up by plaintiffs—particularly to circumstances alleged by the Consumers Power Company. As construed, and within the limitations

of this proceeding, we conclude that under the circumstances of this case Act No. 170 does not disturb vested rights. The legislature may pass statutes of limitation and give them retroactive effect.* *Austin* v. *Anderson*, 279 Mich. 424. A reading of the entire act clearly indicates a legislative intent to give it retroactive effect. Section 9b expressly refers to property that *has been* unclaimed, uncalled-for, or abandoned, for seven years or more. Similar expressions are found in other sections of the act.

Our conclusion that Act No. 170 does not disturb vested rights and is retroactive in effect is in line with our decisions in comparable situations:

"The general property tax law, as amended, by which title to all lands within the borders of the State that had been sold for delinquent taxes and bid in by the State became vested in the State upon expiration of the 18-month period of redemption is not unconstitutional because, previously, lands had to be delinquent in taxes for five years before the State could acquire title, as the right of redemption is not a constitutional right but exists only as permitted by statute, and laws of retroactive character, affecting tax liens which attached prior to such an enactment. by shortening the time previously fixed for sale or redemption, affect only a remedy for the delinquency of the taxpayer and do not impair contract obligations or vested rights (1 Comp. Laws 1929, § 3389 *et seq.*, as amended by Act No. 325, Pub. Acts 1937).

"A taxpayer's right of redemption from sale of land for delinquent taxes is not a constitutional right but exists only as permitted by statute.

"A statute of retroactive character, affecting tax liens which attached prior to its enactment, is not unconstitutional, since it affects only a remedy for

---

* See U. S. Const. art. 1, § 10; Mich. Const. 1908, art. 2, § 9.— Reporter.

the delinquency of the taxpayer and does not impair contract obligations or vested rights." *Baker* v. *State Land Office Board* (syllabi), 294 Mich. 587.

"One who owes delinquent taxes has no vested right to have the interest thereon remain unchanged nor to have the time of sale or period of redemption continue the same as it existed during the period of delinquency.

"Statute amending the general property tax law by providing that absolute title to lands bid in by the State should vest in the State upon expiration of the statutory period of redemption is not unconstitutional as an *ex post facto* law or one impairing the obligation of contract because, previously, the lands had to be delinquent in taxes for five years before the State could acquire title as the right of redemption is but a statutory right and the amendment merely affected the remedy of a delinquent taxpayer (Act No. 114, Pub. Acts 1937, amending Act No. 206, Pub. Acts 1893)." *James A. Welch Co., Inc.,* v. *State Land Office Board* (syllabi), 295 Mich. 85.

The so-called mortgage moratorium act, extending the period of redemption under the statute, was held constitutional. *Russell* v. *Battle Creek Lumber Co.,* 265 Mich. 649.

"Since there is no vested right to any particular remedy, a retrospective statute of a remedial nature, when passed after commencement of an action disputing the legality of certain proceedings cured by the passage of such act, may be urged as a defense to the action (Act No. 53, Pub. Acts 1937)." *Stott* v. *Stott Realty Co.* (syllabus), 288 Mich. 35.

Conceding that circumstances might arise under which the statute of limitations will be held to be modified, or the period of time extended within which an action may be brought, by reason of Act.

No. 170, this does not necessitate holding the act unconstitutional. In discussing the effect of enactments suspending the running of statutes of limitation in time of war, the annotation in 137 A. L. R., at page 1445, citing cases from several States in support thereof, states:

"Statutes of the kind under consideration have generally been held constitutional. For example, they have been upheld as against the objection that they impair the obligations of contracts, upon the ground that they pertain to the remedy, and not to the essence of the contract."

The fundamental rule of construction of statutes is to ascertain and give effect to the intention of the legislature. *Rapid Railway Co.* v. *Michigan Public Utilities Commission,* 225 Mich. 425 (P. U. R. 1924 B, 585). A construction leading to an absurd consequence should be disregarded. *Attorney General* v. *Detroit United Railway,* 210 Mich. 227.

Even a casual review of the Michigan escheat law, and particularly the 1941 amendment, convinces that it is piecemeal legislation with many apparent inconsistencies. For that very reason, and because it is not plain and unambiguous, it is therefore subject to judicial construction. The desirability or the propriety of Act No. 170 is not for the court. Nor is it for the court to rewrite statute law, in a proceeding for a binding declaration of rights. We are compelled to construe Act No. 170, in accordance with well-defined rules of statutory construction, in such manner as to avoid constitutional pitfalls, if this can be reasonably done within the legislative intent. Under the construction given Act No. 170 herein, and within the restricted jurisdiction of the court under the declaration of rights act, we hold that Act No. 170 is not violative of article 5, § 21, of the Michigan Constitution of 1908,

or the due process clauses of the State and United States Constitutions. Section 24 of the act is a severance clause, and the elimination of the parts and paragraphs of the act herein held to be inapplicable or void does not destroy the act in its entirety. In the briefs, counsel ask for direction and guidance on other questions which we consider are not within the province of this proceeding and will be determined only if or when an actual controversy is presented between parties who have an interest therein and would therefore be bound by decision.

A decree may be entered in consonance with this opinion. No costs awarded, a public question being involved.

CHANDLER, NORTH, STARR, WIEST, BUTZEL, BUSH-NELL, and SHARPE, JJ., concurred.