MILLER *v.* DAVIS.[1]

1. STATUTES—RETROACTIVE OPERATION—DETERMINING HEIRS OF DECEDENT.

2 How. Stat. § 5990 *et seq.*, providing that, "when any person shall have deceased having title to any lands in this State," specified proceedings may be had to determine "who are or were the legal heirs of said deceased person," is not limited to cases where the ancestor died after the passage of the act.

[1] Rehearing denied December 24, 1895.

2. ADVERSE POSSESSION—PAYMENT OF TAXES—EVIDENCE.

    The mere assessment of land to a claimant thereof, and the
    payment of the taxes by him, is insufficient to continue an
    adverse possession previously held by his grantor, especially
    where the latter had abandoned the premises prior to convey-
    ing them.

3. ADVERSE POSSESSION—COLOR OF TITLE—ENTRY BY HEIR OF
   FORMER OWNER.

    An entry upon land by an heir of the patentee thereof, from
    whom no conveyance is shown, is not without color of title, al-
    though the patent is not in his possession, and others have
    in fact acquired title to the land by adverse possession.

4. STATUTE OF LIMITATIONS—ACTIONS AFFECTING REALTY

    A right of action to recover the possession of real estate,
    accruing prior to the time when the Revised Statutes of 1838
    took effect, is governed by the statute of limitations thereto-
    fore existing. Rev. Stat. 1838, p. 575, § 8.

Error to Mackinac; Adams, J. Submitted April 5,
1895. Decided September 26, 1895.

Ejectment by Annie M. Miller and others against John
W. Davis and another. From a judgment for defendants,
plaintiffs bring error. Affirmed.

*James McNamara,* for appellants.

*Henry Hoffman,* for appellees.

McGRATH, C. J. This is ejectment. The government
patent issued October 12, 1830, to Joseph St. Andre. In
March, 1836, Edward Biddle executed a bond for a deed
of the property to Antoine Martin, who went into posses-
sion. Biddle died in 1859. In 1861, John Biddle, admin-
istrator of the estate of Edward Biddle, conveyed to
Louis Martin. Louis Martin, in 1866, conveyed to Louis
Martin, Jr.; and, in 1873, Martin conveyed to Jacob Wen-
dell, who died in 1879. Plaintiffs are the heirs of Wendell.
No conveyance from Joseph St. Andre was shown, but
the patent itself was found among the papers of Edward
Biddle. Plaintiffs' testimony tended to show that An-
toine Martin and Louis Martin occupied adversely for

upwards of 20 years; that the taxes upon the property for the years 1857 to 1872, inclusive, except for seven years (for which seven years the tax rolls were not in the county treasurer's office), had been assessed to and paid by the Martins; and that for the years 1873 to 1879, both inclusive, the taxes had been assessed to Wendell, and paid by him for each year except the last named. This suit was commenced October 5, 1892. Joseph St. Andre died in 1825. Defendants trace their title from the alleged heirs of Joseph St. Andre; and the testimony offered in their behalf tends to show that Antoine Martin did not occupy the property for 20 years, but abandoned the same after living thereon for a few years, because of Biddle's inability to give a good title; that Louis St. Andre, who, it is claimed, was an heir of the patentee, found the premises vacant, and went into possession in 1875 or 1876; and that since that time defendants and their grantors have been in possession.

In order to show title from the heirs of Joseph St. Andre, defendants introduced in evidence certain proceedings had under 2 How. Stat. § 5990 *et seq.*, in the probate court for the county of Mackinac, in 1880, to determine the heirs of Joseph St. Andre, consisting of a petition signed by Louis St. Andre, the order fixing the time for the hearing and directing the publication and service, the affidavit of publication, and the order of determination. Objection was made to the introduction of these proceedings, on the ground that the statute is prospective. The statute is not limited to cases where the ancestor dies after the passage of the act. It is to secure a determination as to "who are or were the legal heirs." It is to be invoked in any case where any person shall have deceased having title to lands. It is remedial in its character, takes away no vested rights, and is, like a statute establishing a rule of evidence or one designed to perpetuate testimony, unobjectionable because in a sense retroactive. Cooley, Const. Lim. (6th Ed.) 457-460.

Defendants had the undoubted right to show that

Louis St. Andre was an heir at law of Joseph St. Andre, and entered claiming title as such. The acquisition of title by plaintiffs was not admitted, but was disputed. No testimony was offered on behalf of plaintiffs tending to show that Louis Martin, or any person in that chain other than Antoine Martin, had occupied the premises. The showing that the lands were assessed to the grantors of plaintiffs, and that the taxes had been paid for a portion of the time, was not in and of itself sufficient to continue the adverse or hostile possession, especially if the premises had been abandoned by Antoine Martin, the buildings removed to adjoining premises, and the fence around the inclosure, which had been occupied, allowed to rot down. The fact of Louis St. Andre's entry, and a possession without molestation for 15 years thereafter, were cogent as bearing upon the character of what is by plaintiffs alleged to have been an adverse holding. His entry was not adverse to his cotenants, but in recognition of their rights, under a claim of title as an heir of Joseph St. Andre, the patentee of the entire tract. But, conceding that plaintiffs had established title by adverse possession at a time prior to the entry of Louis St. Andre, the latter cannot be said to have entered without color of title. *Miller* v. *Clark*, 56 Mich. 337; *Hoffman* v. *Harrington*, 28 Mich. 90; *Hecock* v. *Van Dusen*, 80 Mich. 359.[1]

---

[1] Respecting the rights acquired by virtue of the entry and occupancy of Louis St. Andre, the court instructed the jury as follows:

"If you find that, in 1876 or 1877, this man St. Andre went into the possession of that lot 4, claiming to own it,—found it vacant, went into possession, claiming to own it,—and continued to live there, and occupied it, and his possession was open and peaceable and notorious, and he continued there down to 1881, and then conveyed the property to the defendants here, and they continued in that possession right along down to the date of the commencement of this suit, then I charge you that the possession of St. Andre and of these defendants is to be taken together, and, if it amounts to more than 15 years, then it would give them a title by adverse possession. Now, of course, that is based on the idea that he entered there under a paper title, under a claim of title by some writing; and in that connection I call your attention to the patent which was issued to Joseph St. Andre. It appears, I think, in the evidence, that Louis St. Andre was one of the heirs of Joseph St. Andre, and he claimed under that patent, which he says—which it is claimed here—had been issued to Joseph St. Andre by the United States; and, if there

It is insisted that, under the revised statutes of 1838, Antoine Martin's possession, being for more than one year, was a disseisin of the real owner, and, no possession having been attempted, claimed, or taken for 25 years, the real owner must be regarded as having abandoned his claim and title, and any assertion of title afterwards made by him would be of no validity, and such person would therefore be in the same position as a stranger to the title. The case must, however, under express provisions of Rev. Stat. 1838, p. 575, § 8, be governed by the statute as it existed prior to the revision. Section 3 of the repealing act (Rev. Stat. 1838, p. 697) must be held to apply only where provision is not made in the chapter itself.

The judgment is affirmed.

The other Justices concurred.

---

was no paper title, then, as I said in the other case, his adverse possession would only pertain to that portion of the lot which he actually included in the fence,—in the inclosure,—and actually tilled, occupied, and cultivated, or used. On the other hand, if there was a paper title, it was the basis of his claim, and, if that paper title covered the whole lot, then the adverse possession would cover the whole lot. The defendants, or those under whom they claim, had a right to enter into the possession and claim said lot, if at the time they made the entry they found the lot vacant and unoccupied. If such entry was made under a paper title and claim of ownership, it would extend to the whole lot, if the whole lot was described in and covered by the paper title. * * * There are a great many side issues brought in here, but the real question of adverse possession on the part of the plaintiffs and on the part of the defense is the only one in the case. If the plaintiffs have established a claim by adverse possession, it may be overthrown by the defendants' coming in and holding the lands 15 years; and if they have done so, and their possession is open, adverse, continuous, and notorious for a period of 15 years, then, no matter if the plaintiffs' adverse possession had been enough to give them title, yet the defendants must prevail."