**RUSHTON, Atty. Gen., v. SCHRAM.**

No. 9638.

Circuit Court of Appeals, Sixth Circuit.

May 31, 1944.

Arthur L. Fitch and G. Douglas Clapperton, both of Lansing, Mich. (Herbert J. Rushton, Arthur L. Fitch, and G. Douglas Clapperton, all of Lansing, Mich., on the brief), for appellant.

Robert S. Marx, of Detroit, Mich. (Frank E. Wood, Robert S. Marx, Carl Runge, Lawrence I. Levi, and Orville J. Thill, all of Detroit, Mich., and Nichols, Wood, Marx & Ginter, of Cincinnati, Ohio, on the brief), for appellee.

Before SIMONS, ALLEN, and MARTIN, Circuit Judges.

MARTIN, Circuit Judge.

After promulgation of the opinion in the declaratory judgment suit of Starr, Atty. Gen., v. O'Connor, Comptroller of the Currency, 6 Cir., 118 F.2d 548, in which were reviewed Act No. 238, Public Acts of 1897, and the amendments thereto, in their relation to the liquidation of the First National Bank-Detroit, the legislature of Michigan amended these laws by Act No. 170, Public Acts of 1941. While that cause was pending on petition for rehearing, the Attorney General of Michigan filed in this court notice of the 1941 amendatory act. In the state of the pleadings and of the record, we considered that our jurisdiction to pass upon the effect of the new law had not been properly invoked. The petition for rehearing was accordingly denied without a consideration of the amendatory act of which mere notice had been given. The Supreme Court denied certiorari. Starr v. Schram, 314 U.S. 695, 62 S.Ct. 412, 86 L. Ed. 555.

In a new petition for declaratory judgment, filed in the district court on March 14, 1942, Herbert J. Rushton, successor Attorney General of Michigan, has asserted that Act No. 170 is applicable to the First

National Bank-Detroit, which is still in process of liquidation. His argument, upon final analysis, is that this new Act constitutes an effective nullification of our previous declaratory adjudication that the Michigan laws of escheat are not operative upon dormant deposits in possession of the National Bank Receiver.

Relying solely upon the opinion of this court in Starr v. O'Connor, supra, the district court decreed that the Michigan statutes considered in that case and, also, Act No. 170, Public Acts of Michigan for 1941 (which as has been stated was not considered by us), constitute an unlawful interference with the liquidation of an insolvent national bank; and that the Michigan escheat statutes, since the suspension of the First National Bank-Detroit on February 11, 1933, have been and are now inapplicable to the national bank and its receiver. The prayer of the petition of the Attorney General for declaratory judgment and other relief was, therefore, denied. From this decree, an appeal has been taken.

We now, for the first time, consider the effect of the new enactment upon the liquidation of the insolvent First National Bank-Detroit. At the threshold must be confronted the question whether or not Act No. 170, Public Acts of Michigan for 1941, should be construed as retroactive in effect upon the instant national bank liquidation.

■ The rule of construction has been repeatedly adhered to in the Supreme Court that all statutes are to be considered as prospective only, unless the language "is express to the contrary, or there is a necessary implication to that effect." Harvey v. Tyler, 69 U.S. 328, 347, 17 L.Ed. 871; Fullerton-Krueger Lumber Co. v. Northern Pac. R. Co., 266 U.S. 435, 437, 45 S.Ct. 143, 69 L.Ed. 367. In Shwab v. Doyle, 258 U.S. 529, 534, 42 S.Ct. 391, 392, 66 L.Ed. 747, 26 A.L.R. 1454, it was stated that "laws are not to be considered as applying to cases which arose before their passage unless that intention be clearly declared." Mr. Justice Sutherland reiterated this doctrine in Miller v. United States, 294 U.S. 435, 439, 55 S.Ct. 440, 442, 79 L.Ed. 977: "The law is well settled that generally a statute cannot be construed to operate retrospectively unless the legislative intention to that effect unequivocally appears."

■ In harmony with this familiar canon of statutory construction, this court has asserted that no law will be given retroactive effect, unless therein is found a declaration of retroactivity "clear, strong, and imperative." Royal Oak Drain Dist., Oakland County, Mich., v. Keefe, 6 Cir., 87 F.2d 786, 794.

The opinions of the Supreme Court of Michigan are in consonance with the federal decisions in reiterating that all statutes are to be treated as prospective rather than retrospective in operation, unless a legislative intent to the contrary clearly appears, either by express provisions or by necessary implication. Ramey v. Michigan Public Service Commission, 296 Mich. 449, 460, 296 N.W. 323; Detroit Trust Co. v. City of Detroit, 269 Mich. 81, 256 N.W. 811; People v. Foster, 261 Mich. 247, 255, 246 N.W. 60; Price v. Oakfield Township Board, 188 Mich. 524, 530, 154 N.W. 657; Board of Sup'rs of Arenac County v. Board of Sup'rs of Iosco County, 158 Mich. 344, 347, 122 N.W. 629; Davis v. Michigan. Cent. R. Co., 147 Mich. 479, 111 N.W. 76; In re Lambrecht, 137 Mich. 450, 100 N.W. 606; Phillips v. Township of New Buffalo, 68 Mich. 217, 35 N.W. 918; Maxwell v. Bay City Bridge Co., 46 Mich. 278, 287, 9 N.W. 410; Fuller v. City of Grand Rapids, 40 Mich. 395; Smith v. Humphrey, Auditor General, 20 Mich. 398, 405–408; Harrison v. Metz, 17 Mich. 377, 382.

But the Attorney General of Michigan insists that upon the authority of Evans Products Co. v. State Board of Escheats, 307 Mich. 506, 12 N.W.2d 448, Act No. 170 must be applied retroactively in the instant case. In our interpretation, the Supreme Court of Michigan did not indicate that the state statute was intended by the legislature to apply retroactively to the liquidation of a national bank. The court's words were obviously chosen with care: "Plaintiffs assert that in any event Act 170 must be held to be prospective only, and not to be given any retroactive effect. In substance, this would mean that the act does not apply to the facts and circumstances set up by plaintiffs—particularly to circumstances alleged by the Consumers Power Company. *As construed, and within the limitations of this proceeding, we conclude that under the circumstances of this case* [emphasis supplied] Act 170 does not disturb vested rights. The legislature may pass statutes of limitation and give them retroactive effect. Austin v. Anderson, *279 Mich. 424, 272 N.W. 730.* A reading of the entire act clearly indicates a

legislative intent to give it retroactive effect. Section 9b expressly refers to property that has been unclaimed, uncalled-for, or abandoned, for seven years or more. Similar expressions are found in other sections of the act.

"Our conclusion that Act 170 does not disturb vested rights and is retroactive in effect is in line with our decisions in comparable situations: * * * Under the construction given Act 170 herein and within the restricted jurisdiction of the court under the declaration of rights act, we hold that Act 170 is not violative of section 21, article 5, of the Michigan Constitution of 1908, or the due process clauses of the State and United States Constitutions." 307 Mich. at pages 545, 546, 548, 549, 12 N.W.2d at page 461.

The court commented that the Michigan escheat law, and particularly the 1941 amendment, is "piecemeal legislation with many apparent inconsistencies"; is not "plain and unambiguous" and therefore is subject to judicial construction "in such manner as to avoid constitutional pitfalls, if this can be reasonably done within the legislative intent." The cautious expressions of the Supreme Court of Michigan do not support the insistence of the Attorney General that the Act in question must be retroactively applied to the liquidation of a national bank.

The depositories to which Act No. 170 was declared retroactively applicable were a products company, a power company and two intervening railroad companies, all of which were possessed of moneys, credits, deposits, securities or other intangible personal property concerning which no dealings or transactions had been had with the persons entitled to such intangibles for a period of seven years or more. No national bank, or even a state bank, was involved. These depositories had sought declaratory judgment that the Act was unconstitutional in entirety as violative of the Michigan Constitution in amending and repealing by implication certain statutes of limitation and as depriving them of their property without due process of law in violation of both the Constitution of the State of Michigan and the Constitution of the United States. An injunction restraining the Board of Escheats from enforcing the Act had been prayed.

It was in this context and setting, and with the repeated admonition that the consideration of the court was limited to de-termination of whether the statute was unconstitutional upon the asserted grounds, that the holding was made that the Act applied retroactively to the factual situation presented. The opinion stated: [307 Mich. at page 527, 12 N.W.2d at page 454] "Plaintiffs ask that we construe various provisions of the act, determine the legal status of particular transactions where an actual controversy may hereafter exist between persons not now parties herein, and where extraneous or special circumstances may control a decision. Such questions have no proper place in this proceeding, and the construction of the act will not be here considered except as it may be necessary in a determination of the constitutional questions involved." The limited scope of the subject matter covered by the opinion was thus emphasized. The court expressly declined to adjudicate issues upon diversified transactions which might be subsequently presented in litigation between other parties. Certainly the Act was not accorded universal retroactivity. With full faith and credit extended the state law, as interpreted by the state's highest court, the question has been left open for us to decide whether the state legislature apparently intended that an amendatory act should carry retroactive force upon a cause pending in a federal court wherein existing state statutes in the same field of legislation have been declared to be inoperative.

In Smith v. Humphrey, Auditor General, supra, Justice Cooley, the great Michigan jurist, said that "when the design of the Legislature in any of its provisions, is at all in doubt, the title [of an Act] will often prove not only the most satisfactory source of information on that subject, but may sometimes supply us with a solution which will be altogether conclusive."

As amended by Act No. 170 of Public Acts of 1941, the title to the pertinent Act reads as follows: "An act to provide for the discovery by the state board of escheats or the attorney general of escheated and escheatable estates, including abandoned property, and providing the procedure to declare such property escheated to the state, and for the disposition thereof, and declaring the statute of limitations not applicable to such proceedings."

Nowhere in this caption is a suggestion that the Act is to be applied to dormant deposits in a national bank which is in course of liquidation. Certainly, the inclusion of the words "abandoned property"

in the title does not point clearly, unequivocally, imperatively, or by necessary implication to a legislative intent to embrace retroactively within the scope of the provisions of the body of the Act abandoned deposits in a national bank, which went into liquidation eight years prior to the enactment. Mich.Stats.Ann.1943, Cum.Supp. p. 131.

Section 9(a) of the Act added by Pub. Acts 1933 No. 171 as amended by Public Acts 1941, No. 170 [19 Mich.Stat.Ann. Sec. 26.1031, 1943 Supp. p. 137], provides: "When any depository, as hereinbefore defined, operating within this state, whose business is being liquidated or dissolved, shall have, be in possession of or in control of, in any way or manner, of any money, securities, credits or property of any kind belonging to any depositor or depositors for which no claim has been filed or for which no demand has been made within the period during which a claim or demand is by law or by decree required to be filed or made by depositors, or when any depository operating within this state, whose business is being liquidated or dissolved, shall have, be in possession or in control, as aforesaid of any money, securities, credits or property of any kind regarding which the depositor thereof has filed no claim and has had no dealings with such depository and/or with the receiver, custodian or liquidating agent thereof, for a period of seven [7] years from the date of the last deposit or transaction, such money, securities, credits or property of any kind shall be subject to escheat to the people of the state of Michigan, as other escheated, escheatable or abandoned property, and shall, at the discretion of the attorney general or the state public administrator, be administered as in this act provided, or the attorney general may intervene for and on behalf of the people of the state of Michigan in any pending suit or may institute suit to have such property decreed to have escheated and be escheated to the state.

"The attorney general shall have the right and be permitted to file one or more claims with the receiver, trustee, custodian or liquidating agent of such depository, which shall be allowed or disallowed the same as if filed by the depositor, and subject to the same set-offs. Such claim or claims filed by the attorney general shall cover and include all deposits for which no claims have been filed by the depositor or depositors, and may be filed at any time before payment of final dividend. Dividends shall be paid to the state board of escheats on all claims so filed by the attorney general, and allowed."

■ It should be first observed that this section does not in terms apply to the liquidation of a national bank, although it does apply to a depository operating within the state whose business is being liquidated. True, the generic word "depository" would include a national bank, if the Michigan lawmakers so intended. But it is reasonable to presume that the legislature did not intend to apply it to national banks in liquidation at the time the amendatory act was passed, for the reason that Congress has provided that the Comptroller of the Currency shall make ratable dividends of money paid over to him by the receiver of a national bank on such claims as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction; shall make further dividends on all claims previously proved or adjudicated; and, after making such distribution, shall pay over to the shareholders of the banking association the remainder of the proceeds of the liquidation in proportion to stock respectively held. See 12 U.S.C.A. § 194. It should not be implied that the Michigan legislature intended to promulgate a retroactive law, which would interfere with the complete system provided by Congress for winding up national banks and distributing their effects in a manner neither limited nor enlarged by other statutory provisions with respect to the settlement of demands against insolvents or their estates. See Cook County Nat. Bank v. United States, 107 U.S. 445, 448, 450, 2 S.Ct. 561, 27 L. Ed. 537, in which it was declared that the provisions of the national bank laws must be deemed to have withdrawn national banks which have failed from the class of insolvent persons out of whose estate demands of the United States are to be paid in preference to the claims of other creditors.

■ Surely the legislature took cognizance of the principle that national banks are immune from such state control as would conflict with the laws of the United States. See Davis v. Elmira Sav. Bank, 161 U.S. 275, 283, 16 S.Ct. 502, 503, 40 L. Ed. 700, wherein at the outset of the opinion Mr. Justice White said: "National banks are instrumentalities of the federal government, created for a public purpose,

and as such necessarily subject to the paramount authority of the United States. It follows that an attempt by a state to define their duties or control the conduct of their affairs is absolutely void, wherever such attempted exercise of authority expressly conflicts with the laws of the United States, and either frustrates the purpose of the national legislation or impairs the efficiency of these agencies of the federal government to discharge the duties for the performance of which they were created. These principles are axiomatic, and are sanctioned by the repeated adjudications of this court."

We must assume familiarity of the Michigan legislature with the admonitions of the Supreme Court in Easton v. State of Iowa, 188 U.S. 220, 238, 23 S.Ct. 288, 293, 47 L.Ed. 452: "Our conclusions, upon principle and authority, are that Congress, having power to create a system of national banks, is the judge as to the extent of the powers which should be conferred upon such banks, and has the sole power to regulate and control the exercise of their operations; that Congress has directly dealt with the subject of insolvency of such banks by giving control to the Secretary of the Treasury and the Comptroller of the Currency, who are authorized to suspend the operations of the banks and appoint receivers thereof when they become insolvent, or when they fail to make good any impairment of capital; that full and adequate provisions have been made for the protection of creditors of such institutions by requiring frequent reports to be made of their condition, and by the power of visitation by Federal officers; that it is not competent for state legislatures to interfere, whether with hostile or friendly intentions, with national banks or their officers in the exercise of the powers bestowed upon them by the general government." See also Grindley v. First Nat. Bank-Detroit, 6 Cir., 87 F.2d 110, 112.

■ We do not presume that the Michigan legislature intended to disregard principles of comity between state and federal authority to the extent of ignoring the interpretation by the federal court in Starr v. O'Connor, supra, of the then existing Michigan laws of escheat in their relationship to the liquidation of a national bank. It is not an easy inference that a state legislature intended to nullify the decision of a federal court within its competent jurisdiction by the enactment of a ret-

rospective law. It is much more logical upon principles of comity to infer that the legislature intended the new law to operate only prospectively upon national banks which may be placed in liquidation at some time subsequent to the passage of the Act.

■ If an interpretation of a state statute can be reasonably adopted which does not bring the enactment within the inhibition of federal law, that interpretation should prevail against another which would rest upon an assumption that the state legislature intended to enact a law in conflict with the constitution or statutes of the United States. Should the instant amendatory act be construed as intended to have retroactive effect, there would be an apparent unlawful interference with the present liquidation of the First National Bank-Detroit.

■ The decision of the Supreme Court of the United States in Anderson National Bank v. Luckett, 321 U.S. 233, 64 S.Ct. 599, appertains to a solvent and operating national bank, and does not, in our opinion, lend support to the position of the Attorney General upon the instant issue. In the light of that fresh authority, we do not say that if invoked for prospective application, and in a manner consistent with the federal statutes, the Michigan statute would conflict with the national banking laws and constitute an unlawful interference with the liquidation of a national bank. Discussion of that problem is deemed inappropriate in view of our conclusion that the Act under consideration carries no retroactive effect in the present situation.

In the opinion in Starr v. O'Connor, supra, it was made clear that inasmuch as no depositor could have active dealings with the bank after its suspension, no time could be added, after that event, to accumulate the total of seven years' inactivity of a deposit account essential to an escheat action under the Michigan laws. The amendatory act under consideration contains substantially the same provisions touching the running of the requisite seven years' time for escheat which were condemned in our former opinion; and provides more drastically that claims filed by the Attorney General shall cover and include all deposits for which no claims have been filed by the depositors, and that claims may be filed at any time before payment of final dividend. The federal statute provides

that the comptroller shall make ratable dividends on all such claims "as may have been proved to his satisfaction or adjudicated in a court of competent jurisdiction." Thus, there is apparent conflict.

The Supreme Court has held that in making the "ratable" distribution of assets of an insolvent national bank required by Sec. 5236 of the Revised Statutes, 12 U.S.C.A. § 194, dividends must be declared proportionately upon the amounts of all claims as they stood on the date of insolvency. American Surety Co. of New York v. Bethlehem Nat. Bank, 314 U.S. 314, 317, 62 S.Ct. 226, 86 L.Ed. 241, 134 A.L.R. 509.

In Merrill v. National Bank of Jacksonville, 173 U.S. 131, 143, 19 S.Ct. 360, 365, 43 L.Ed. 640, it was said: "The distribution is to be 'ratable' on the claims as proved or adjudicated; that is, on one rule of proportion applicable to all alike. In order to be 'ratable,' the claims must manifestly be estimated as of the same point of time, and that date has been adjudged to be the date of the declaration of insolvency." This language was quoted with approval in the Bethlehem National Bank case, supra, 314 U.S. at pages 317, 318, 62 S.Ct. at page 228, 86 L.Ed. 241, 134 A.L.R. 509. Compare Ticonic Nat. Bank v. Sprague, 303 U.S. 406, 58 S.Ct. 612, 82 L.Ed. 926.

The Court of Appeals for the Second Circuit in Loughman v. Town of Pelham, 2 Cir., 126 F.2d 714, 717, has stated: "The appointment of a receiver in July 1933 seized the bank's assets for 'ratable' distribution in accordance with the provisions of 12 U.S.C.A. § 194. This requires that dividends be declared proportionately upon the amount of all claims as they stood at the date of insolvency. American Surety Co. v. Bethlehem Nat. Bank, 314 U.S. 314, 62 S.Ct. 226, 86 L.Ed. [241, 138 A.L.R. 506]. It is well settled that state statutes which attempt to create preferences arising upon the bank's insolvency must be disregarded. [Citing Authorities.] A fortiori preferences cannot be created by retroactive state legislation enacted subsequent to the receiver's appointment."

We have suggested obstacles which the attorney general would encounter had the conclusion been reached that the legislature of Michigan intended to apply Act No. 170 to the instant national bank liquidation. Expression of a few of these difficulties does not exclude others. The Michigan authorities cited in support of his conten-

tion have been examined but are not considered applicable here. Miller v. Davis, 106 Mich. 300, 64 N.W. 338; Jamison v. Ramsey, 128 Mich. 315, 87 N.W. 260. Nor do the Supreme Court decisions which he cites aid his argument. The gist of the holding in Terry v. Anderson, 95 U.S. 628, 24 L.Ed. 365, is that it is not unconstitutional to reduce by subsequent enactment the limitation period in effect when a right of action accrued, provided a reasonable time is allowed for the commencement of suit before the bar of the statute takes effect. Campbell v. Holt, 115 U.S. 620, 6 S. Ct. 209, 29 L.Ed. 483, merely holds that it is not unconstitutional to repeal a statute of limitation of actions on personal debts insofar as such repeal affects the debtor against whom such right of action is already barred.

Welch v. Henry, 305 U.S. 134, 147, 59 S.Ct. 121, 126, 83 L.Ed. 87, 118 A.L.R. 1142, was only a holding that a retroactive income tax law is not necessarily violative of the due process clause of the Constitution. It was asserted that "in each case it is necessary to consider the nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitations." In Ewell v. Daggs, 108 U.S. 143, 2 S.Ct. 408, 27 L.Ed. 682, it was held that the repeal of a usury statute did not unconstitutionally deprive a debtor of his defense under it. Gross v. United States Mortg. Co., 108 U.S. 477, 2 S.Ct. 940, 27 L.Ed. 795, and Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413, 88 A.L.R. 1481, are not considered remotely in point.

The operative portion of the decree of the district court is affirmed.

SIMONS, Circuit Judge (concurring).

I agree with the result reached in the opinion of the court, but on other grounds. I am not so confident, as are my colleagues, that the latest amendment to the Michigan Escheats Statute has not been held generally retroactive in Evans Products Co. v. State Board of Escheats, 307 Mich. 506, 12 N.W.2d 448, 461, notwithstanding the reservations in the opinion in that case confining decision to the depositories there involved. I see no way to avoid the general conclusion therein recited, "A reading of the entire act clearly indicates a legislative intent to give it retroactive ef-

fect." The temporal sequence of events following our decision in Starr v. O'Connor, 6 Cir., 118 F.2d 548, would seem to indicate clearly the intention of the legislature to make the amendment retroactive in respect to dormant deposits in the banks here involved.

I think, however, that the amended Act, at least insofar as it permits the state administrator to exercise powers of visitation and inquisition, and insofar as it imposes penalties upon an agency of the federal government in possession of the assets of an insolvent national bank, operates as an unlawful interference with the liquidation of a national bank provided for in § 194, 12 U.S.C.A., of the National Banking Act. That section, it has repeatedly been held, provides a complete and comprehensive scheme for the liquidation of insolvent national banks. Nothing in Anderson Nat'l Bank v. Luckett, collides with this view. It may very well be that the protective custody of the state reaches inactive bank accounts in solvent national banks. Such banks, though subject to federal regulations, are owned and operated by private corporations, and subject to state law. Where, however, custody has passed to the federal government in the exercise of constitutional and legal powers under federal law, I think the state is not empowered to interfere with it without the government's consent, clearly expressed in Congressional enactment. The distinction, it seems to me, is basic.