Lucien **TALIAFERRO** and Priscilla Taliaferro, Plaintiffs-Appellants,

v.

Henrik E. **STAFSETH,** Director of the Michigan Department of State Highways, et al., Defendants-Appellees.

No. 71–1329.

United States Court of Appeals, Sixth Circuit.

Feb. 11, 1972.

Lafferty, Reosti, Jabara, Papakhian, James, Stickgold, Smith & Soble, Ronald Reosti, Detroit, Mich., on brief for plaintiffs-appellants.

Shiro Kashiwa, Asst. Atty. Gen., Jacques B. Gelin, Glen R. Goodsell, Attys., Dept. of Justice, Washington, D. C., Ralph B. Guy, Jr., U. S. Atty., Harold Hood, Asst. U. S. Atty., Detroit, Mich., on brief for defendants-appellees.

Before PHILLIPS, Chief Judge, and McCREE and MILLER, Circuit Judges.

PHILLIPS, Chief Judge.

The Federal-Aid Highway Act of 1968 [1] provides for relocation payments not to exceed $5,000 to certain owners of real estate displaced by federal aid highway construction projects. The payment permitted by this statute is in addition to compensation for damages. The Act became effective August 23, 1968.

■ The sole issue on this appeal is whether this statute should be applied retroactively to a displaced owner of real estate whose title was divested before the enactment of the 1968 Act but who continued to occupy the condemned property after the effective date of the new legislation.

District Judge Fred W. Kaess answered this question in the negative, granted summary judgment against the displaced landowners, and dismissed the suit. We affirm.

On June 27, 1968, the Road Commission of Wayne County, Michigan, acquired title to the property of plaintiffs located at 4762 Spokane in Detroit, by depositing the full amount of a $14,350 jury verdict in a Michigan State condemnation proceeding. Plaintiffs no longer were owners of the property after that date. Although title to the property had been divested out of them before August 23, 1968, the effective date of the Act, plaintiffs continued to occupy the condemned premises as tenants at will until February 1, 1969, when they moved to a new residence.

A tender of $1500 over and above the jury verdict was made to plaintiffs under 23 U.S.C. § 506(b).[2]

1. Pub.L. 90–495, § 30, 82 Stat. 832; 23 U.S.C. §§ 506, 510–11.

2. § 506. Replacement housing

(a) In addition to amounts otherwise authorized by this title, the State agency shall make a payment to the owner of real property acquired for a project which is improved by a single-, two-, or three-family dwelling actually owned and occupied by the owner for not less than one year prior to the initiation of negotiations for the acquisitions of such property. Such payment, not to exceed $5,000, shall be the amount, if any, which, when added to the acquisition payment, equals the average price required for a comparable dwelling determined, in accordance with standards established by the Secretary, to be a decent, safe, and sanitary dwelling adequate to accommodate the displaced owner, reasonably accessible to public services and places of employment and available on the private market. Such payment shall be made only to a displaced owner who purchases and occupies a dwelling within one year subsequent to the date on which he is required to move from the dwelling acquired for the project. No such payment shall be required or included as a project cost under section 504 of this title if the owner-occupant receives a payment required by the State law of eminent domain which is determined by the Secretary to have substantially the same purpose and effect as this section and to be part of the cost of the project for which Federal financial assistance is available.

(b) In addition to amounts otherwise authorized by this title, the State agency shall make a payment to any individual or family displaced from any dwelling not eligible to receive a payment under subsection (a) of this section which dwelling was actually and lawfully occupied by such individual or family for not less than 90 days prior to the initiation of negotiations for acquisition of such property. Such payment, not to exceed $1,500, shall be the amount which is necessary to enable such person to lease or rent for a period not to exceed 2 years, or to make the down payment on the purchase of, a decent, safe, and sanitary dwelling of standards adequate to accommodate such individual or family in areas not generally less desirable in regard to public utilities and public and commercial facilities.

Added Pub.L. 90–495, § 30, Aug. 23, 1968, 82 Stat. 832.

Plaintiffs contend that they qualify as owners under § 506(a) and are entitled to payment of $5,000.

The District Court pointed out that § 506(b) applies to "any individual or family displaced from any dwelling not eligible to receive payment under subsection (a)," plus other qualifications; and that § 506(a) applies by its terms to a "displaced owner." The ruling of the District Court is that the term "displaced person" applies to both § 506(a) and § 506(b), but that § 506(a) applies only to "displaced owner," who held title on or after the effective date of the Act. Accordingly, the District Court ruled that plaintiffs are entitled to payment under § 506(b) but not under § 506(a).

Plaintiffs urge that this court adopt a liberal interpretation of the Act to effectuate the intent of Congress. The brief of plaintiffs cites nothing in the Act and no legislative history indicating any intent that § 506(a) is to be applied to a displaced person whose title was divested prior to the effective date of the Act. Counsel for plaintiffs filed a stipulation for the submission of this case on briefs and the court therefore did not have the benefit of oral argument.

■■ "Acts of Congress are generally to be applied uniformly throughout the country from the date of their effectiveness onward." United States v. Estate of Donnelly, 397 U.S. 286, 297, 90 S.Ct. 1033, 1038, 25 L.Ed.2d 312. It is well settled that a statute will not be given retroactive effect in the absence of a clear declaration of retroactivity by Congress. Rushton v. Schram, 143 F.2d 554 (6th Cir.). It is incumbent upon the person who argues for retrospective application to show that Congress intended for the Act to be applied in that fashion.

The legislative history demonstrates that Congress intended for the Act to take effect on the date of its enactment (except certain provisions which were not to become applicable to all the States until July 1, 1970). Conf. Rep. No. 1799, 90th Cong., 2d Sess., 1968 U.S. Code Cong. & Admin.News p. 3547.

Affirmed and remanded for further proceedings not inconsistent with this opinion. No costs are taxed.