577 F.2d 1073
 Milburn WEATHERINGTON, Petitioner-Appellant,
v.
Richard N. MOORE and United States Department of Justice,
United States Parole Commission, J. Robert Cooper,
Commissioner, Respondents-Appellees.
 No. 77-1194.
 United States Court of Appeals,
Sixth Circuit.
 Argued Oct. 3, 1977.
Decided June 6, 1978.
 
 Joe A. Dycus, Stephen B. Shankman, Memphis, Tenn., for petitioner-appellant.
 W. J. Michael Cody, U. S. Atty., Devon L. Gosnell, Asst. U. S. Atty., Memphis, Tenn., for respondents-appellees.
 Before PHILLIPS, Chief Judge, EDWARDS, Circuit Judge, and CECIL, Senior Circuit Judge.
 PHILLIPS, Chief Judge.
 
 
 1
 The sole issue in this appeal is whether 18 U.S.C.A. § 4210(b) (Supp.1977) operates retroactively to deprive the United States Parole Commission of jurisdiction over a person whose original sentence expiration date has been extended prior to the effective date of this enactment. In an order published at 431 F.Supp. 515 (W.D.Tenn.1977), District Judge Robert M. McRae, Jr., concluded that the statute should not be given retroactive effect and denied the petition for a writ of habeas corpus. We affirm.
 
 I.
 
 2
 Appellant, Milburn Weatherington, was sentenced January 14, 1954, to a maximum term of twenty years imprisonment for bank robbery and first was paroled in March 1964. His parole was revoked in November 1971, and, pursuant to a now-repealed statute, 18 U.S.C. § 4205,[1] the new expiration date of his sentence became September 22, 1981. Appellant was paroled again in May 1972.
 
 
 3
 Subsequently, Congress enacted the Parole Commission and Reorganization Act, 18 U.S.C. § 4201 et seq., Pub.Law 94-233, 90 Stat. 219, which became effective May 14, 1976. Section 4210(b) of the Act replaces the former § 4205 and provides in part:
 
 
 4
 Except as otherwise provided in this section, the jurisdiction of the Commission over the parolee shall terminate no later than the date of the expiration of the maximum term or terms for which he was sentenced . . . .
 
 
 5
 This section substantially alters prior law by giving the parolee credit toward service of his sentence for time previously spent in prison and for time previously spent on parole.[2]
 
 
 6
 Appellant was arrested on the present parole violation warrant in October 1976. His parole was revoked after a hearing January 25, 1977, and appellant was ordered returned to the penitentiary. On January 28, 1977, appellant filed a writ of habeas corpus pursuant to 28 U.S.C. § 2241(c)(1), (3). Appellant contends that the "maximum term" for which he was sentenced expired in 1974, twenty years after his conviction for robbery. Therefore, appellant argues that the Parole Commission lost jurisdiction over him on May 14, 1976 (the effective date of § 4210(b)) and that a writ of habeas corpus should issue.
 
 
 7
 The Government, on the other hand, argues that because the 1971 parole revocation extended the "maximum term" of appellant's twenty year sentence until September 22, 1981, the Parole Commission had jurisdiction to revoke his parole in January 1977.
 
 
 8
 In denying the petition for a writ of habeas corpus, the district court concluded that § 4210(b) should not be applied retroactively to deprive the Parole Commission of jurisdiction over appellant. The district court reasoned that:
 
 
 9
 Because the maximum term of the petitioner in this case was reestablished in 1971 to a date in 1981, the Parole Commission did not lose jurisdiction of the petitioner on 14 May 1976, the effective date of 18 U.S.C. § 4210(b). That jurisdiction included the right to revoke the parole status that existed on the effective date of the statute. 431 F.Supp. at 517.
 
 
 10
 This appeal was filed March 21, 1977.
 
 II.
 
 11
 Upon a review of pertinent legislative history[3] and § 4210(b) itself, we find no indication that the section was to be given retroactive effect to hearings conducted before May 14, 1976. Regulations published by the Parole Commission in 28 C.F.R. § 2.57 (1976) support this conclusion and provide:
 
 
 12
 § 2.57 Effective date.
 
 
 13
 The effective date of the regulations in this Part shall be May 14, 1976. Any order of the United States Board of Parole entered prior to May 14, 1976, including, but not limited to, orders granting, denying, rescinding or revoking parole or mandatory release, shall be a valid order of the United States Parole Commission according to the terms stated in the order.
 
 
 14
 Senator Burdick, in submitting the report of the conference committee to the Senate, stated that:
 
 
 15
 This legislation is prospective in its application. Decisions to grant, deny, modify, or revoke parole made by the parole agency prior to the effective date of this act are to be carried out pursuant to the law in effect at the time of the decision. Examples of prospective application of the provisions of this legislation include, but are not limited to, the length of time between hearings for a prisoner denied parole section 4208(h) and computation of time remaining to be served for individuals whose parole has been revoked section 4210(b) and provisions relating to termination of parole supervision section 4211.
 
 
 16
 122 Cong.Rec. S2,573 (daily ed. Mar. 2, 1976).
 
 
 17
 Applying these clear declarations of congressional intent to the present case, we conclude that because the maximum term of appellant's sentence was validly extended[4] until 1981 prior to the effective date of § 4210(b), the Parole Commission had jurisdiction to revoke the parole status that existed on the effective date of the statute.
 
 
 18
 The Ninth Circuit recently reached a similar conclusion in White v. Warden, United States Penitentiary, 566 F.2d 57 (9th Cir. 1977), in which the court held that the Parole Commission and Reorganization Act should not be given retroactive effect. See also Daniels v. Farkas, 417 F.Supp. 793, 794 (C.D.Cal.1976).
 
 
 19
 The Government argues further that to construe the repeal of 18 U.S.C. § 4205 as eliminating the penalties imposed through parole revocation hearings made pursuant to that statute would contravene 1 U.S.C. § 109 which provides in part:
 
 
 20
 The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. (emphasis added).
 
 
 21
 This court likewise has stated that the presumption lies in favor of prospective application of a statute, in the absence of a congressional declaration of retroactivity. In Taliaferro v. Stafseth, 455 F.2d 207 (6th Cir. 1972), an action involving the Federal Highway Act of 1968, this court noted that:
 
 
 22
 A statute will not be given retroactive effect in the absence of a clear declaration of retroactivity by Congress. Rushton v. Schram, 143 F.2d 554 (6th Cir.) It is incumbent upon the person who argues for retrospective application to show that Congress intended for the Act to be applied in that fashion. Id. at 209.
 
 
 23
 Appellant has failed to show a "clear declaration of retroactivity by Congress."
 
 
 24
 Affirmed.
 
 
 25
 EDWARDS, Circuit Judge, dissenting.
 
 
 26
 I agree with the opinion of the court that the Parole Commission and Reorganization Act, 18 U.S.C. § 4210(b) (1976), which for the first time gives federal prisoners credit on their sentences for satisfactory street time on parole before any violation, was not intended by Congress to be retroactive. I regret to add that this does not end the matter for me.
 
 
 27
 Appellant was sentenced in 1954 to 20 years in the federal penitentiary. He was paroled in 1964 and remained on parole for seven years before revocation. Under the mandate of the statute in effect in 1971, the Board of Parole not only revoked his parole, but deprived him of the time (seven years) he had served satisfactorily on parole before violation. The result, as I view it, is that since his judicially administered sentence terminated in 1974, he has been effectively resentenced to serve seven more years until 1981.
 
 
 28
 During this court's consideration of this appeal, we requested the parties to brief the following question which had not to that point been either asked or answered:
 
 
 29
 Assuming without deciding that the Parole Commission and Reorganization Act of 1976 is prospective only, and requires that appellant serve a term of custody (counting both penitentiary time and parole time before violation) which exceeds his sentence by the District Court, would such a statutory construction offend Article III, section 1 of the United States Constitution, or the Fifth, Sixth or Fourteenth Amendments to the United States Constitution?
 
 
 30
 The critical question upon which the answer to the constitutional problem rests is whether or not "street time" on parole prior to violation represents service of the criminal sentence imposed. Of course, it has always, for all practical purposes, represented such service when parole was completed without violation.
 
 
 31
 For many years, however, the legal concept of parole was that it was a matter of "grace" extended by the Parole Board. Hiatt v. Compagna, 178 F.2d 42, 45 (5th Cir. 1949), aff'd without opinion by an equally divided Court, 340 U.S. 880, 71 S.Ct. 192, 95 L.Ed. 639 (1950). See Note, Parole Revocation Procedures, 65 Harv.L.Rev. 309, 310 (1951); Weihofen, Revoking Probation, Parole or Pardon Without a Hearing, 32 J.Crim.L.C. & P.S. 531, 533-34 (1942); or perhaps a matter of "contract" between the parolee and the Parole Board, Marshall v. Hiatt, 73 F.Supp. 471 (M.D.Pa.1947); Fuller v. State, 122 Ala. 32, 41, 26 So. 146 (1899). In either instance the grant of parole was considered to be exclusively within the province of the Parole Board. Under many state statutes, parole boards could credit good parole service toward the sentence or refuse to do so completely within its discretion. Under the former federal statute, 18 U.S.C. § 4205, cancellation of credit for good parole service was mandatory once there was a violation and revocation.
 
 
 32
 As I read parole cases of the United States Supreme Court, the underpinning of the absolute discretion of parole boards has now been removed. In a seminal case granting a parolee the right to contest the validity of his criminal sentence by petition for writ of habeas corpus, Justice Black, for a unanimous Court, held that parole was "custody." Jones v. Cunningham, 371 U.S. 236, 83 S.Ct. 373, 9 L.Ed.2d 285 (1963):
 
 
 33
 The Virginia statute provides that a paroled prisoner shall be released "into the custody of the Parole Board," 16 and the parole order itself places petitioner "under the custody and control of the Virginia Parole Board." And in fact, as well as in theory,[17] the custody and control of the Parole Board involve significant restraints on petitioner's liberty because of his conviction and sentence, which are in addition to those imposed by the State upon the public generally. Petitioner is confined by the parole order to a particular community, house, and job at the sufferance of his parole officer. He cannot drive a car without permission. He must periodically report to his parole officer, permit the officer to visit his home and job at any time, and follow the officer's advice. He is admonished to keep good company and good hours, work regularly, keep away from undesirable places, and live a clean, honest, and temperate life. Petitioner must not only faithfully obey these restrictions and conditions but he must live in constant fear that a single deviation, however slight, might be enough to result in his being returned to prison to serve out the very sentence he claims was imposed upon him in violation of the United States Constitution. He can be rearrested at any time the Board or parole officer believes he has violated a term or condition of his parole,[18] and he might be thrown back in jail to finish serving the allegedly invalid sentence with few, if any, of the procedural safeguards that normally must be and are provided to those charged with crime.[19] It is not relevant that conditions and restrictions such as these[20] may be desirable and important parts of the rehabilitative process; what matters is that they significantly restrain petitioner's liberty to do those things which in this country free men are entitled to do. Such restraints are enough to invoke the help of the Great Writ. Of course, that writ always could and still can reach behind prison walls and iron bars. But it can do more. It is not now and never has been a static, narrow, formalistic remedy; its scope has grown to achieve its grand purpose the protection of individuals against erosion of their right to be free from wrongful restraints upon their liberty. While petitioner's parole releases him from immediate physical imprisonment, it imposes conditions which significantly confine and restrain his freedom; this is enough to keep him in the "custody" of the members of the Virginia Parole Board within the meaning of the habeas corpus statute; if he can prove his allegations this custody is in violation of the Constitution, and it was therefore error for the Court of Appeals to dismiss his case as moot instead of permitting him to add the Parole Board members as respondents.
 
 
 34
 Jones v. Cunningham, supra, 371 U.S. at 241-43, 83 S.Ct. at 376.
 
 
 35
 Of course, the case just quoted dealt only with the right to file a petition for habeas corpus. However, no Supreme Court decision dealing with parole[1] appears to have modified its holding that a convicted prisoner who had been released from prison on parole continued nonetheless to be in custody and subject to important deprivations of his liberty. See 18 U.S.C. § 4209 (1976) and 28 C.F.R. §§ 2.40 to 2.41 (1977).
 
 
 36
 If this be so, it is hard to see justification for failing to accord a prisoner credit on his judicially administered sentence for "good street time" prior to any parole violation. Further, it would seem to the writer that if the parolee were to be deprived of such good street time credit, the decision to do so would have to be made by the same branch of government which administered the sentence in the first instance, namely, the Judiciary.
 
 
 37
 Prior to the 1976 Parole Commission and Reorganization Act, 18 U.S.C. § 4201 et seq., the former federal statute squarely provided that "the time the prisoner was on parole shall not diminish the time he was sentenced to serve." 18 U.S.C. § 4205 (1976). This former statute, which required the Board of Parole to deprive the prisoner of any credit for parole time prior to violation, was upheld by various Courts of Appeals against constitutional attack. Van Buskirk v. Wilkinson, 216 F.2d 735 (9th Cir. 1954); Hall v. Welch, 185 F.2d 525 (4th Cir. 1950); Dolan v. Swope, 138 F.2d 301 (7th Cir. 1943).
 
 
 38
 So long, of course, as parole was conceived of as freeing the parolee from "custody" and so long as parole was conceived of as being founded upon the "grace of the Parole Board" or a "contract between the prisoner and the Parole Board," these decisions just cited might be defended as having a logical basis.
 
 
 39
 However, once it is firmly established that a parolee is released by authority of law under statutorily authorized limitations and restrictions and thus remains in "custody" until the end of his sentence or until his parole is revoked, the situation in theory and fact is materially altered. It is difficult to find instances where the federal courts have considered this problem. An exception is Bates v. Rivers, 116 U.S.App.D.C. 306, 323 F.2d 311 (1963). In Bates v. Rivers a panel of the United States Court of Appeals for the D.C. Circuit, without discussing any constitutional problems (which presumably had not been raised by the parties), relied upon the parole statute applicable to the District of Columbia, which contained language similar to 18 U.S.C. § 4205 (1976) and denied good street time parole credit. But see the dissenting opinion of Judge Skelly Wright, supra, 116 U.S.App.D.C. at 307-310, 323 F.2d at 312-315. The panel majority also cited and relied upon Anderson v. Corall, 263 U.S. 193, 196, 44 S.Ct. 43, 68 L.Ed. 247 (1923), and Zerbst v. Kidwell, 304 U.S. 359, 58 S.Ct. 872, 82 L.Ed. 1399 (1937). Neither of the cases considered any constitutional challenge. Both cases were primarily concerned with time out of prison after violation. The Anderson case relied entirely upon the then applicable statute in upholding the power of the Parole Board, and Zerbst v. Kidwell considered a fact problem entirely unlike our present one. Both cases were, of course, decided long before Jones v. Cunningham, supra.
 
 
 40
 The Congress of the United States has now considered this problem in great depth and decided in the 1976 amendment to give federal prisoners full credit for time satisfactorily served on parole prior to violation. It did not, however, see fit to make this decision retroactive; hence, there are many prisoners in the federal penal system who are now serving sentences which have been extended by action of the Parole Commission in denying credit for time satisfactorily served on parole. Appellant Weatherington is one of these. This class of prisoner will now be facing many years of additional prison time unauthorized by any judicial sentence under a system which the Congress of the United States has now abandoned in the interest of justice.
 
 
 41
 It appears to me that the recognition that good parole time is served "in custody" requires recognition that sentences extended by the Parole Commission under 18 U.S.C. § 4205 by deprivation of satisfactorily served time on parole represent 1) resentencing by an administrative agency, a part of the executive branch and not a part of the federal judiciary, in violation of the doctrine of separation of powers and Article III of the U.S. Constitution;[2] 2) a violation of the prohibition against double jeopardy found in the Fifth Amendment to the United States Constitution, since the denial of credit for good time on parole represents an added penalty for the original offense; and 3) in violation of the right of any accused person to be accorded a fair and public trial in accordance with the provisions of the Fifth, Sixth and Fourteenth Amendments.
 
 
 42
 For the reasons stated above, I respectfully dissent.
 
 
 
 [1]
 18 U.S.C. § 4205 provided:
 A warrant for the retaking of any United States prisoner who has violated his parole, may be issued only by the Board of Parole or a member thereof and within the maximum term or terms for which he was sentenced. The unexpired term of imprisonment of any such prisoner shall begin to run from the date he is returned to the custody of the Attorney General under said warrant, and the time the prisoner was on parole shall not diminish the time he was sentenced to serve.
 
 
 [2]
 See H.R.Conf.Rep. No. 94-838, 94th Cong., 2d Sess., reprinted in (1976) U.S.Code Cong. & Admin.News pp. 351, 364
 
 
 [3]
 See generally S.Rep. No. 94-369 94th Cong., 1st Sess. (1975); H.R.Rep. No. 94-184, 94th Cong., 2d Sess. (1976); H.R.Conf.Rep. No. 94-838, 94th Cong., 2d Sess. (1976); S.Conf.Rep. No. 94-648, 94th Cong., 2d Sess. (1976); 121 Cong.Rec. 15,700-15 (1975) (House debates); 121 Cong.Rec. 28,829-33 (1975) (Senate debates); 122 Cong.Rec. S2,572 (daily ed. Mar. 2, 1976) (conference report); 122 Cong.Rec. H1,499 (daily ed. Mar. 3, 1976) (conference report)
 
 
 [4]
 The maximum term of appellant's sentence was extended by the amount of time he had spent on parole. See Lavendera v. Taylor, 234 F.Supp. 703, 704 (D.Kan.1964), aff'd, 347 F.2d 989 (10th Cir. 1965)
 
 
 [16]
 Va.Code Ann. § 53-264
 
 
 [17]
 See Anderson v. Corall, 263 U.S. 193, 196, (44 S.Ct. 43, 68 L.Ed. 247) (1923) ("While (parole) is an amelioration of punishment, it is in legal effect imprisonment"); von Hentig, Degrees of Parole Violation and Graded Remedial Measures, 33 J.Crim.L. & Criminology 363 (1943)
 
 
 [18]
 Va.Code Ann. §§ 53-258, 53-259. In fact, all the Board has to find is that there was "a probable violation."
 
 
 [19]
 Even the condition which requires petitioner not to violate any penal laws or ordinances, at first blush innocuous, is a significant restraint because it is the Parole Board members or the parole officer who will determine whether such a violation has occurred
 
 
 [20]
 The conditions involved in this case appear to be the common ones. See Giardini, The Parole Process, 12-16 (1959)
 
 
 [1]
 See, e. g., Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972); Moody v. Daggett, 429 U.S. 78, 97 S.Ct. 274, 50 L.Ed.2d 236 (1976)
 
 
 [2]
 The constitutions of the United States and of the several states provide that the judicial power shall be vested in the courts and it is a violation of this mandate for any other branch of government to perform judicial functions such as the imposition of a sentence requiring imprisonment as a criminal penalty. Wong Wing v. United States, 163 U.S. 228, 16 S.Ct. 977, 41 L.Ed. 140 (1896). See also Gellhorn & Byse, Administrative Law 165 (1960). As a forfeiture of street time has the effect of lengthening the term through which the state may exercise control over a convicted individual, in effect it amounts to an imposition of an additional sentence or at least to the lengthening of the original sentence. Both of these functions are within the province of the courts and are excluded from the jurisdiction of the board. People ex rel. Ingenito v. Warden, 267 App.Div. 295, 46 N.Y.S.2d 72 (4th Dep't 1943); Commonwealth ex rel. Banks v. Cain, 345 Pa. 581, 28 A.2d 897 (1942); Wyback v. Board, 32 Wash.2d 780, 203 P.2d 1083 (1949). It is thus an improper usurpation of the judicial function for an administrative agency to require a forfeiture of street time and if such is the case it becomes an improper delegation for the legislature to authorize or require an administrative agency to forfeit street time for violation of parole
 Note, Parole: A Critique of its Legal Foundations and Conditions, 38 N.Y.U.L.Rev. 702, 714 n.69 (1963).